**STATE of Missouri, Respondent,**

v.

**Wilbert Benjamin WILLIAMS, Appellant.**

**No. 51153.**

Supreme Court of Missouri,

Division No. 1.

June 14, 1965.

Norman H. Anderson, Atty. Gen., Thomas J. Downey, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from an order overruling appellant's motion to vacate judgment and sentence under Criminal Rule 27.26, V.A.M.R.

On January 30, 1954, Wilbert Benjamin Williams pleaded guilty to a charge of robbery in the first degree and was sentenced to imprisonment in the penitentiary for a term of twenty-five years. Section 560.135, RSMo. 1959, V.A.M.S.

On January 25, 1954, at approximately 2:25 P. M., Wilbert Benjamin Williams and Marvin Harold Howard entered the Farmers & Merchants Bank in Wright City, Warren County, Missouri. Appellant was carrying a .25-caliber automatic pistol and his companion was carrying a 20-gauge sawed-off shotgun. They ordered four bank employees and three customers into the vault and closed the door on them. They then put $21,797.50 into a bag, ran to their automobile and sped east on U. S. Highway 40. They were stopped and arrested by the state patrol several miles south of Wentzville, and were taken back to the bank where they were identified as the persons who robbed the bank a short time earlier.

Appellant contends that the judgment and sentence should be set aside because "Defendant was denied due process and the equal protection of law * * *." He gives six reasons in support of his contention, which are:

"1. * * * there was no thorough determination of his capabilities to adequately and clearly understand the law of the case, that is, he was not advised of the various defenses available to him; the Court made superficial inquiries as to appellant's schooling * * * which plainly showed that he was not qualified to conduct his defense * * *. The Court did not judicially determine whether or not defendant intelligently waived his right to counsel; * * * it then became the duty of the Court to protect defendant's rights * * *."

"2. The Constitution of Missouri * * * and the 5th and 14th Amendments to the Constitution of the United States prohibit convictions obtained as was this one. There were no witnesses * * *, there was simply an offense alleged, a police report made, defendant was arrested without reasonable grounds * * * all of which was purely circumstantial * * * because of the evidence found in the car * * *. The 'And other circumstances affecting defendant' (from Criminal Rule 29.01) were not considered * * *."

"3. In the absence of the Court's findings being made a part of the court record, it may be reasonably assumed that the Court failed to assume proper responsibility as provided in * * * Rule 29.01 * * *. Thus, the Court should have of its initiative and volition and discretion, considered the serious aspects of the offense and appointed counsel."

"4. The plea of guilty * * * is null and void; not only because it was involuntarily given, but because, also, the Court did not * * * grant a preliminary hearing to determine its voluntariness * * *. Defendant was advised by the prosecutor (to plead guilty because he would be convicted anyway and the plea would lessen the gravity of the crime) * * *."

"5. * * * that an involuntary plea of guilty cannot be used to obtain a conviction * * *."

"6. For a layman of low-level intelligence, * * * it * * * will be judicially noted that * * * inducements by the prosecutor not only did not lessen the gravity of the offense charged nor the severity of the sentence, but also misled defendant boy indicating that there was not much for defendant to worry about since he had not been identified by any witnesses."

Contrary to the contention made in reason 3, the trial court filed the transcript of proceedings required by Criminal Rule 29.01 (b), V.A.M.R.; and inasmuch as that transcript so completely contradicts and belies appellant's charges, we quote from it at length.

"EXAMINATION OF DEFENDANT BY THE COURT:

"Q Your name is Wilbert Benjamin Williams? A Yes, sir.

"Q How old are you? A 21. Q When is your birthday? A The 30th of November, '32.

"Q Where do you live? A St. Louis County. Q Whereabouts? A Elmwood Park. Q What is your address? A Route 2, Box 375, Clayton 24, Missouri.

"Q Are you married or single? A Married. Q What does your family consist of? A Wife and three kids.

"Q How far did you go in school? A The 11th grade. Q That would be what, Junior in High School? A Yes, sir.

"Q Williams, you are charged in this Court with the offense of robbery in the first degree and you are charged to have, on January 25, 1954, in Warren County, Missouri, wilfully, unlawfully and feloniously, robbed, stole and take and carry away the sum of $21,797.50 of money from the Farmers and Merchants Bank of Wright City, Missouri, putting one Dorothy Williams in fear of some immediate injury to her person by means of a dangerous and deadly weapon, to-wit: a 25 calibre automatic pistol, and in which information it is also alleged that Dorothy Williams was an employee of this Farmers and Merchants Bank. Now do you understand the nature of the charge? Do you understand what you are charged with? A Yes, sir.

"Q If you were to enter a plea of guilty to the charge, or if you were to enter a plea of not guilty and were tried before a jury and found guilty, the punishment that would be assessed for this offense would range from not less than five years in the penitentiary to life imprisonment, or the death penalty. Do you understand what the range of the punishment is that might be assessed in this case? A Yes, sir.

"Q Under the law you are entitled to consult with friends or an attorney and the Court will give you a reasonable time to talk with friends or to consult an attorney if you desire to do so. Do you wish time to talk with some friends or do you wish time to employ an attorney? A No, I don't, Your Honor.

"Q If you are financially unable to employ an attorney, the Court will appoint an attorney for you who will advise with you and tell you what your rights are, and I will give such an attorney a reasonable time to talk with you and to prepare the defense of this case. Are you financially able to employ an attorney? Do you have the money to hire one? A No, sir.

"Q Do you want the court to appoint one for you? A No.

"Q You have discussed this case with any of your friends or relatives? A Yes, I have.

"Q You have completed the junior year in high school? A Yes, sir.

"Q Where do you work? A Well, we have had a small business of our own. I have been driving a truck for my mother for about the last six years. Q Who owns the business? A My mother does. Q What type of business is it? Is it just a hauling business? A Yes, sir. Q You mean you hire the truck— A No, we have got a regular route that is supposed to be taken care of every day. Q What do you haul? A Trash and garbage. Q In doing that do you have to keep books and send bills out the first of each month? A Yes, sir. Q Who does that? A I have done some of it, and my mother. Q You have been able to keep books on this business of yours? A Yes, sir. Q Can you read and write? A Yes, sir.

"Q I will ask you again, you do not want to employ an attorney, is that correct? A That's correct. Q And you do not want the Court to appoint one to represent you? A That's correct. Q You want to

now proceed with this matter without benefit of counsel, is that correct? A Yes, sir.

"Q Has the Prosecuting Attorney made any promise to you, if you were to plead guilty that any special treatment would be given you or any promise of immunity? A No, sir. Q Has the Prosecuting Attorney told you what he is going to recommend as punishment in this case? A No, sir. Q He has not indicated if you would enter a plea of guilty it would be easier on you? A No, sir.

"THE COURT: The Court finds that the defendant has intelligently waived the right to have counsel. Now the Prosecuting Attorney is going to read to you the information in this case which is the basis of this charge. I want you to pay careful attention to it.

"(Information read by Prosecuting Attorney Hoelscher.)

"THE COURT: Now Mr. Williams, you were taken before Judge Volkerding downstairs in this Courthouse building several days ago, were you, for a preliminary hearing? A I was taken before some Judge— I don't remember his name. Q And the charge was read to you, was it? A Yes, sir. Q And you were given the opportunity to consult with an attorney? A That's right. Q And you were told by the Prosecuting Attorney that you were entitled to have a preliminary hearing or that if you desired you could waive a preliminary hearing, is that correct? A That's correct.

"Q Were you also told that you could be brought up the next time that the Circuit Court was in session or that you could wait until the next term? A Yes, sir. Q And did you then tell the Prosecuting Attorney you wanted to be brought up as soon as you could? A That's right.

"Q You understood down there in the Magistrate Court that you had a right to have a hearing before anything was done about binding you over to this Court, is that correct? A That's correct.

"THE COURT: Wilbert Benjamin Williams, you have heard the charge, what say you, guilty or not guilty?

"DEFENDANT: Guilty, Your Honor.

\* \* \* \* \* \*

"THE COURT: Now Mr. Williams, you have heard the statement made by the Prosecuting Attorney in which he set forth what he states the facts of this matter to be. Is his statement true? DEFENDANT WILLIAMS: Yes, it is, Your Honor.

"THE COURT: Is there any part of it that he was in error in as your recollection of the event would indicate? DEFENDANT WILLIAMS: Only the part where he said that they needed a screw driver to open up the vault door. It didn't seem to me that a screw driver would be necessary to open the door because it wasn't locked.

"THE COURT: You think that the condition the door was when you left it, a person could have grabbed the handle and pulled it back open? DEFENDANT WILLIAMS: Yes, sir. THE COURT: And consequently they could have from the inside pushed it open? DEFENDANT WILLIAMS: Yes.

"THE COURT: What about the gate between the vault door and—DEFENDANT WILLIAMS: I think the gate was locked. THE COURT: You all did lock the gate? DEFENDANT WILLIAMS: Yes, sir.

"THE COURT: Are there any other facts or circumstances that you think might not have been completely accurate in his statement? DEFENDANT WILLIAMS: That's all, Your Honor.

\* \* \* \* \* \*

"THE COURT: Mr. Williams, at this time the Court wants to accord you the right to make any statement you care to make, anything you might think would aid the Court in assessing a proper punishment in this case. You will have an opportunity now to make any statement you care to

make to the Court that will be of some aid to me in assessing proper punishment.

"DEFENDANT WILLIAMS: Well, Your Honor, the only thing, the only reason I took part in this was because I thought maybe someday maybe my wife and family would get better things and things wouldn't be so hard. That's why I did it.

"THE COURT: How long had you planned this? DEFENDANT WILLIAMS: About a week.

"THE COURT: Had you been up to Wright City to look the place over? DEFENDANT WILLIAMS: Yes, sir.

"THE COURT: What else do you have to say? I want to give you every opportunity to state anything you want to state that you think is in your favor or that the court should consider. DEFENDANT WILLIAMS: That's about it.

"THE COURT: No one talked you into this? You did it knowing what you were doing, is that correct? DEFENDANT WILLIAMS: Yes, Your Honor.

"THE COURT: And you say you thought by obtaining a substantial sum of money you might provide for emergencies in later life and an education for your children, is that correct? DEFENDANT WILLIAMS: That's correct.

"THE COURT: Do you think that the recommendation that the Prosecuting Attorney makes is severe for this type of offense? DEFENDANT WILLIAMS: Yes, I do. I think it is pretty severe.

"THE COURT: What do you think should be the punishment to be assessed in a case where two men go in with deadly weapons and in the course of this incident confine 7 people into a vault? What do you think is a fair punishment in a case like that, considering that the man has practically no record at all? DEFENDANT WILLIAMS: I couldn't say what would be fair but we went into the Bank with no intentions in our mind to harm anyone.

"THE COURT: What if they wouldn't have done what you told them to do? What if one had rushed at you and tried to wrestle the gun from you? Would you have used it? DEFENDANT WILLIAMS: It wasn't my intentions. THE COURT: Why did you load them then? DEFENDANT WILLIAMS: I don't know, Your Honor.

"THE COURT: Do you have anything further you care to state to the Court? DEFENDANT WILLIAMS: I don't think so.

\* \* \* \* \* \*

"THE COURT: Do you know of any legal reason or cause why judgment should not be pronounced against you in this case? If so, make it known at this time. DEFENDANT WILLIAMS: No, Your Honor.

"THE COURT: What I have to say preceding sentence in this case is equally applicable to the other case. You have two young men here who are well educated, especially in view of the unfortunate limitations that society has placed on their race. The Court can see in the Courtroom quite a number of people who the Court knows are friends or relatives and families of these two boys. They are fine looking people, intelligent and moral looking people, which in addition to these two boys as they have been brought before the bench does indicate an unusually fine background. The failure of these boys to attempt to escape by force likewise is in their favor. Their cooperation with the officers following their apprehension is in their favor. They evidence to the Court a sincere regret for their present situation, and I think to some degree a sincere regret that they ever did it but their regret is to some degree that they have been caught and they must be punished.

"The range of the punishment in a case such as this—the Legislature has regarded

it as most serious. This is one of the few cases where the death penalty is made available as punishment, life imprisonment, 75, 80, 85 years in the Penitentiary. The range is great and the maximum punishment is permitted under the constitution and the law and has been for a long time because, and properly so, it is a very serious offense. The theft of the money in so far as the $21,797.50 is concerned, that is not what constitutes the degree of robbery under which these men are charged. It is the offense of robbery with a deadly weapon. Had they only taken a dollar, one dollar, in this robbery, they would have been guilty of identically the same offense as they are guilty of today with $21,000 plus. Consequently, the Legislature hasn't regarded the amount of money taken as the basis for the amount of punishment in this particular instance, but it is the fact that human life is endangered that has made this the serious charge that it is.

"In this particular case it is not one human life or two or three, it is seven. If these men had intended only to use these firearms to frighten someone to get money with an honest intention in their mind that they would never hurt anyone, they would go as far as they could with fright and threats but never actually hit anyone as one of them said, or hurt anyone, then they could have well taken empty shotguns so that they would have been sure, in the excitement of a struggle while they were in there, either by accident or deliberately in the excitement no one would have been hurt. Yet they loaded these firearms. I doubt very much if they said to themselves, 'if they come toward me, I am going to pull the trigger,' but they did put into their hands instruments, had they pulled the trigger one or more human lives could have been lost.

"The Court feels that except for the good record, and I am completely ignoring this petty larceny charge in Fayette, except for the good records in both these cases, and an apparently unusually high moral level background, for a charge of this nature the Court should never consider a day under 40 years in the penitentiary. The Prosecuting Attorney in this case has made his investigation, he has consulted with the officers, he is more familiar with the facts and the background in the instance of this case. The Court has been a Prosecuting Attorney in the past and I know that a thorough investigation causes a Prosecuting Attorney to come into possession of a view of a case better than a mere recitation of an hour or an hour and a half such as we have had this morning and for that reason I have great respect for the recommendation of any Prosecuting Attorney that appears before me.

"I do think in view of this situation, in view of the seven people in that Bank that were subjected to being shot to death or suffocating to death—according to the statement of the Prosecuting Attorney they had to use this screw driver to get out—I just can't help but believe if it was only a matter of pushing the door open, they would have done it.

"Therefore, it is the judgment and sentence of this Court, Wilbert Benjamin Williams, that you serve a sentence of twenty-five (25) years in the Missouri State Penitentiary."

The sentence and judgment contains the following recitals: " * * * comes Wilbert Benjamin Williams, the defendant herein, in person in the custody of the sheriff of this county and in open court but without counsel, the Court having, prior to defendant's plea of guilty heretofore entered, given defendant opportunity and reasonable time to talk with a friend and an attorney, and having informed defendant of his right to counsel and explained wherein the exercise of said right might be of benefit to defendant, and having found that defendant was mentally able and was sufficiently informed to decide his need for counsel, and the Court having offered to appoint counsel for defendant to conduct his defense, but defendant having waived

such right to counsel; and the court having found that failure to appoint counsel could not result in injustice to defendant &ast; &ast;."

Criminal Rule 29.01(a), V.A.M.R. provides in part: "In every criminal prosecution in any court of this State, the accused shall have the right to appear and defend the same in person and by counsel. If any person charged with the commission of a felony appears upon arraignment without counsel, it shall be the duty of the court to advise him of his right to counsel, and of the willingness of the court to appoint counsel to represent him if he is unable to employ counsel. If the defendant so requests, and if it appears from a showing of indigency that he is unable to employ counsel, it shall be the duty of the court to appoint counsel to represent him. If, after being informed as to his rights, the defendant indicates his desire to proceed without the benefit of counsel, and the court finds that he has intelligently waived his right to have counsel, the court shall have no duty to appoint counsel unless it appears to the court that, because of the gravity of the offense charged and other circumstances affecting the defendant, the failure to appoint counsel may result in injustice to the defendant."

The excerpts from the transcript of proceedings show compliance with the Rule in all respects. The accused was accorded the right to appear in person and by counsel. The court advised the accused of his right to counsel and of the court's willingness to appoint counsel. The court offered to appoint counsel and the accused declined the offer. The accused did not request counsel and indicated his desire to proceed without counsel. The court made a determination from the facts contained in the transcript that the accused intelligently waived his right to counsel. In addition, the court considered the gravity of the offense and other circumstances affecting him, including his background, moral level, family, friends, understanding, cooperation, and so on. Finally, the court made a determination that the accused could proceed

without counsel and without injustice to himself.

 Appellant's six reasons fall into two categories: 1. That he was deprived of his constitutional rights because he did not intelligently waive counsel, which, under the circumstances, the court should have appointed in spite of defendant's desires and waiver; and 2. That the plea of guilty was not voluntary because of defendant's ignorance and cannot, therefore, support a conviction, and entry of the guilty plea violated his right against self-incrimination.

The transcript of proceedings shows that the accused had opportunity to consult with family and friends and that such persons were present at the proceedings. It is also shown that the accused was twenty-one years old, married, and father of three children; that he had completed the junior or eleventh year of school, could read and write, was engaged in a trash business serving regular customers in which he drove a truck, kept books, and sent out bills; that he understood the nature of the charge and punishment that could be assessed; that the prosecuting attorney had made no promises or inducements; that he understood his right to have had a preliminary hearing and to be there assisted by counsel, all of which he waived, and that he understood the effect and consequence of the waiver.

Under these circumstances, State v. McDonald, Mo., 343 S.W.2d 68, is directly in point. That also was a proceeding under Criminal Rule 27.26, V.A.M.R. to vacate judgment and sentence of twenty-five years' imprisonment upon a plea of guilty to robbery in the first degree entered without assistance of counsel. The defendant was 22 years of age, single, lived with his sister, had gone to the 6th grade in school, and had talked to his mother and stepfather before pleading guilty. The contention there was that the court was required to appoint counsel whether requested to do so or not. The court reviewed a num-

ber of Missouri and federal authorities and among them were Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, cited by appellant here. The court said, 343 S.W.2d l.c. 72[5]: " * * * There was and could have been no fundamental unfairness under these circumstances. And even now defendant does not state that he was not guilty of the offense charged, or that he was not offered counsel or that he then desired counsel. While he states now that a request for counsel was not and is not necessary, it is clear that the whole matter of request or no request is immaterial if a defendant is offered counsel and declines the offer. This defendant was offered full opportunity to stand trial, with counsel, and elected not to do so. There is certainly no such showing here of ignorance, feeble-mindedness or illiteracy as to require the mandatory appointment of counsel (Powell, supra.) The files and records show the contrary. The facts of this case are in many respects like those in State v. Glenn, Mo., 317 S.W.2d 403, where the motion was summarily disposed of and the judgment affirmed."

Appellant has directed our attention to three other federal cases: Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; and Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed. 2d 811. The first dealt with a situation in which under Alabama law certain defenses had to be made at arraignment or were lost to an accused. Under those circumstances and where it appeared that the accused had such a special defense, it was held that the accused must have counsel at arraignment. We said in State v. Barton, Mo., 379 S.W.2d 562, 563[1]: "As to the first claim, failure of the court to appoint counsel, the transcription of the proceed-

ings upon his plea of guilty reveals that the court plainly and fully explained to Barton the charge, told him that he was entitled to a trial by a jury and, despite Barton's interruption 'I'm guilty, Your Honor,' the court proceeded to tell him that '(y)ou are also entitled to have the services of an attorney to advise with you and represent you before you take any action in this case, and you are not required to take any action today.' * * * Repeatedly the appellant declined the offer of an attorney or a jury trial and, despite some illiteracy, the appellant fully understood the nature of the charge and the proceedings and advisedly waived the right to counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Douglas v. [People of State of] California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Annotation 9 L.Ed.2d 1260, 1262, 'It may be implied from the Supreme Court's opinions that an accused in a state prosecution may waive his right under the Fourteenth Amendment to be represented by counsel, provided that such waiver is intelligently and understandingly made.'" Accordingly, we rule appellant's complaints as to absence of counsel against him.

▉▉▉ As to his claim that his guilty plea was involuntary, appellant states the principle involved in Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 478: "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." The rules for determining the voluntariness of a guilty plea are set out in State v. Williams, Mo., 361 S.W.2d 772, 775[3, 4]: "We have said: 'The guiding rules are that a plea of guilty is but a confession in open court. Like a confession out of court it should be received with caution. It should never be received unless it is freely and voluntarily made. If the defendant should be misled or be induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be

false or ill founded, he should be permitted to withdraw his plea. The law favors a trial on its merits.' State v. Cochran, 332 Mo. 742, 60 S.W.2d 1, 2; * * *. A leading Missouri case is State v. Stephens, 71 Mo. 535, 536, in which it is said: 'Courts have always been accustomed to exercise a great degree of care in receiving pleas of guilty, in prosecutions for felonies, to see that the prisoner has not made his plea by being misled, or under misapprehension or the like.' Thereafter in State v. Dale, 282 Mo. 663, 669, 222 S.W. 763, 764, this Court said: 'It is immaterial whether the misleading was intentionally or unintentionally done. The material inquiry is: Was the defendant misled, or under a misapprehension, at the time he entered his plea of guilty?' " In applying these rules we refer again to the transcript of proceedings, and it there appears that the trial court proceeded with care to determine the understanding and intelligence of the accused, and his knowledge of how his plea of guilty would affect him. Appellant suggests that his plea was involuntary because it was induced and coerced by the prosecuting attorney, but the transcript shows denials by the accused of the existence of any such persuasion. The transcript shows that the defendant was in no way misled; nor was he under any misapprehension at the time he entered his plea of guilty, and we conclude that his plea was voluntary and not in violation of his constitutional rights. State v. Richardson, Mo., 347 S.W.2d 165, 173[11].

 We said in State v. King, Mo., 380 S.W.2d 370, 373[1–6]: "If the motion presents no material issues of fact, or if the issues presented may be determined by the record and files in the original case, the Court may summarily rule the motion, since the Court may take judicial notice of its own records and the prior proceedings in the case." In this case the files and records, which include the transcript prepared and filed as required by Criminal Rule 29.01(b), refute all issues presented by appellant's motion, and we conclude that the court properly determined the issues from the record and files without a hearing.

The order of the court is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.