**STATE of Missouri, Respondent,**

**v.**

**Robert Clifton MOUNTJOY, Appellant.**

**No. 52576.**

Supreme Court of Missouri,

Division No. 2.

Nov. 13, 1967.

Norman H. Anderson, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

STOCKARD, Commissioner.

Defendant has appealed from an order of the circuit court, entered after an evidentiary hearing, overruling his motion pursuant to Criminal Rules 27.25 and 27.26, V.A.M.R., to set aside his plea of guilty to the charge of robbery in the first degree.

At the hearing on the motion a transcript of the proceedings at the time the plea of guilty was entered was offered and received in evidence, and it is necessary that we relate what occurred at that time.

Defendant was represented by able counsel experienced in criminal trial work who had been employed by his mother. His trial started on November 1, 1961, and after the jury had been selected but before it was sworn, defendant and his counsel appeared before the trial judge in chambers. Counsel stated that he wanted to "make a record," and he then advised the court that he had conferred with defendant and had advised him of his rights and the penalties attendant to a conviction of the offense charged, and that he had "advised him to enter a plea of guilty." He further stated: "The court has indicated that it would give serious consideration to the defendant's extreme youth of eighteen years, and the fact that he has no previous record. The defendant however has expressed an adamant wish and demand and desire that he does not desire to plead guilty, and that he desires to stand trial." Counsel then added that he was greatly handicapped in representing properly the defendant because he "has not and apparently will not communicate to counsel what his defense is to this case," that he "has refused to read a copy of his purported confession which was furnished to us by the counsel for the state," and that while he has indicated that he desires to take the witness stand in his own behalf he "will not communicate to counsel what testimony if any he intends to give." Counsel then advised the court that "in the defendant's best interests" he intended to call as witnesses defendant's mother and other members of his family "to mitigate and minimize some of the testimony on behalf of the State," but that defendant does not desire this to be done, and has instructed counsel not to call those persons as witnesses, and has indicated that if counsel violates his wishes he intends to create a disturbance by "shouting and throwing a chair into the jury box." To this the defendant replied: "I ain't got no lawyer. I don't want this lawyer. He is telling you I am guilty and I ain't." In

answer to some comments by the court, defendant further stated: "He [his counsel] is not defending me in court anywhere," "he won't try me, that's all. He ain't nothing," and "I won't wish to have this lawyer. I've got rights." Counsel then stated that although defendant had previously announced that he desired his present counsel to defend him, he now claimed to have another lawyer who is to try the case, but he has not disclosed the name of that lawyer and his mother has advised counsel that there is no such person. Counsel then stated that if defendant did not desire him to act as his attorney he requested permission to withdraw from the case. The court stated that it would not permit counsel to withdraw at that stage of the proceedings. Counsel stated to the court that he had advised the defendant the best that he could, and that "it is my feeling now that the only defense which he has consists in presenting witnesses * * * from his family, and that I do intend to call them."

After the court commented on the reputation, capabilities and experience of defendant's counsel, defendant replied: "This present counsel done told you I was guilty; he stood right there and told you. And I say I am not." The court then advised defendant that the purpose of the trial was to find out whether he was or was not guilty, and that he would receive a fair trial. After admonishing defendant that if he initiated any disturbances in the courtroom he would be held in contempt of court, the trial court directed that the parties proceed with the trial.

Thereafter in the courtroom, but out of the hearing of the jury panel, counsel for defendant advised the court that he had "just been advised that at this time the defendant wishes to withdraw his plea of not guilty to this charge and enter a plea of guilty." The record then shows the following:

"The Court: Is that true, Mr. Mountjoy?

"Mr. Robert Clifton Mountjoy: Yes.

"The Court: You realize of course that you are entitled to a jury trial.

"Mr. Mountjoy: Yes.

"The Court: And if found guilty by a jury the punishment imposed might be more or less or the same that this Court might impose, you understand that?

"Mr. Mountjoy: Yes.

"The Court: You are asking that I accept your plea of guilty because you are guilty, is that correct?

"Mr. Mountjoy: Yes.

"The Court: Very well. I will accept this defendant's plea of guilty, but I want a presentence investigation. Will the prosecutor have a recommendation to make?

"Mr. Lawrence F. Gepford: May I withhold my recommendation, Your Honor, at this time?

"The Court: Yes. Very well, the court accepts the defendant's plea of guilty, and orders a presentence investigation to be made, and sentence will be deferred until November 15, 1961."

On the appointed date defendant and his counsel appeared before the court for sentencing. At that time the court stated that it had received and studied the presentence investigation report and the files of the prosecuting attorney on which the pending and other charges against defendant were based. The court stated that it was "very difficult" for it to impose the sentence that it had concluded "must be imposed," and it then announced the sentence to be imprisonment for a term of fifteen years. The defendant then stated: "Your Honor, Mr. Schrader [defense counsel] and the Prosecutor says on my plea of guilty I pleaded guilty to five years." The court replied as follows: "Nobody told you that. Everybody, every lawyer that does any business with the court knows that I do not accept any plea of guilty upon any contract with

the defendant. You pled guilty and into the record stated that you were pleading guilty because you are guilty, * * *." The prosecuting attorney then announced that it was dismissing a separate and different charge against defendant of assault with intent to rob with malice aforethought, "for the reason that the State is unable to make a case, the witnesses are dead."

On August 19, 1966, almost five years after he entered his plea of guilty, defendant filed a motion in the trial court pursuant to Criminal Rule 27.25 to set aside the judgment of conviction and permit him to withdraw his plea of guilty. He alleged in the motion that (1) he entered the plea of guilty "because of fraud and collusion, [mis?]-apprehension and lack of representation of petitioner's counsel;" (2) there was "collusion and agreements between counsel for defendant and counsel for the State;" (3) he was "under constant duress and was led to believe by counsel for the State as well as counsel for defendant that if he would enter a plea of guilty, because of his youth and because he had no prior felony record, he would receive only five years;" (4) he was "led to believe by his counsel that he had no defense, and that there were no mitigating circumstance when in fact there were, and petitioner-defendant did have have a good defense;" (5) that he was "reluctant to plead guilty, but finally did so at the urging of counsel for the state and counsel for defendant with the understanding, 'or because of the understanding' that he would receive only five years imprisonment;" and (6) the court knew that "it was not the wishes of defendant to enter such a plea to this crime, and yet upon the plea of guilty, failed to question defendant to see whether there was fraud involved or whether or not counsel for the State had made any promises of a light sentence to the defendant."

The transcript shows that two representatives of the Defender Society of Greater Kansas City were appointed to represent defendant at the hearing on the motion, but with no further order on this matter, at the hearing defendant was represented by different counsel, apparently of his own selection.

In his testimony defendant attempted to emphasize, as he stated it, that he "didn't know nothing about court proceedings," that at the time of his plea he was only eighteen years of age, and that prior to trial his counsel repeatedly advised him to plead guilty. Defendant had a separate and different charge pending against him, apparently the one which was dismissed immediately after sentencing, and the facts giving rise to this separate charge were that defendant and the then husbands of his two sisters (at the time of the hearing on the motion both had been divorced) had assaulted a blind man and robbed him of a check and had taken his hearing aid. Defendant testified that his counsel had told him that he "was involved with robbing a blind man and if I did it, they would give me fifty years." He also testified that his counsel told him that he "had to plead guilty, that he was going to put my mother and sisters on the stand and tell the jury that I was guilty," and that if defendant would not let his mother "get on the stand and tell the jury that [he] was guilty that he [counsel] did not want to try the case in Court." The purpose of this, according to the defendant, was that his counsel "figured if my people got on the stand and told the jury I was guilty that they would give me less time than what the judge would," and that this would be "sympathy strategy."

After the conference in the judge's chambers, according to defendant, his counsel again "told [defendant] to plead guilty," and told him that he "didn't have a chance, * * * other than having [his] mother plead [him] guilty to the jury." When the defendant told his counsel that he "wouldn't plead guilty to nothing," he "stood there shaking his head." Defendant then said that "my people were nervous, and I figured I had to go ahead and plead guilty—tell the jury I was guilty. How could I plead not

guilty?" Defendant also stated that he believed that he had an "understanding" that he would receive a sentence of five years with credit for "jail time," that he "had to plead guilty because they were going to plead me guilty to the jury," and he had no intent to plead guilty except for this understanding.

Defendant was asked if he was "telling the court at this time [the hearing on the motion] that he was not guilty," "and he replied that he was asserting that he was "not guilty of first degree robbery," but in answer to a question as to his age when he entered his plea of guilty he said that he was eighteen, "but not when I robbed the guy."

Defendant's mother and two sisters testified. They each stated that defendant's counsel had said or caused them to believe that if defendant entered a plea of guilty, he would receive a sentence of five years. The mother testified that defendant's counsel "said he had a conference with the judge and the prosecutor," and that counsel had said that the court "had agreed upon a five year sentence." One of defendant's sisters also testified that defendant's counsel had said that "he had already talked it over with you [the trial judge] and Mr. Gepford and that he had no defense for Robert." The other sister said that she urged defendant to plead guilty because his counsel "said that was his only chance, that he was going to get fifty years."

The trial court then directed a recess to obtain the testimony of defendant's counsel and of the counsel for the state at the proceeding on November 1, 1961. Their version was substantially different from that of defendant and his witnesses.

Defendant's counsel testified that approximately a month prior to November 1, 1961, he first conferred with the State's attorney about a plea of guilty. At that time the State's attorney indicated that in the event of a plea of guilty by defendant he would make a recommendation as to the punishment. Defendant's counsel stated that he did not remember the exact number of years that was discussed, but that possibly it was for a term of five years. Counsel then conveyed the information to the defendant, but defendant stated that he did not want to plead guilty and wanted to go to trial. Counsel then prepared for trial, and after the jury had been selected, the conference in the judge's chambers occurred as previously set out. Counsel reported to defendant's mother and his two sisters what had occurred in the judge's chambers, and "they asked to talk to [defendant] by themselves without counsel being present." Thereafter defendant's mother reported to counsel that "he wants to change his plea to guilty," and she asked whether "the prosecutor [would] still make a recommendation?". Counsel then conferred with the State's attorney who said that "in view of the matters that had taken place during that day," apparently referring to defendant's threat to cause a disturbance in the courtroom and his conduct in the judge's chambers, he was not going to make a recommendation, and counsel reported this to "them" (defendant, his mother, and his sisters) and stated that if there was a plea of guilty it would be "without a recommendation from the prosecutor's office." Counsel asserted postitively that there was no agreement concerning a recommendation from the State's attorney. On cross-examination, counsel stated that only one time did he recommend to defendant that he plead guilty, and that was about a month before trial, and at that time he told defendant that the prosecutor had said that he would make a recommendation. He further stated that he did not "remember one way or another but it is entirely possible" that at his conference with defendant's mother and sisters after the incident in the judge's chambers that he recommended to them that defendant plead guilty. In answer to the question whether he had mentioned to defendant that he "felt the court would be lenient with him because of his age and no previous record," counsel stated that such discussion would have been in

the conversation with defendant held a month before trial, but "after the events occurred here in the courtroom and here in chambers [he] wouldn't have made such a statement." When asked if he had told defendant that if he went to trial it would be necessary to have his mother and sisters testify, counsel replied as follows: "We had a discussion as to what his defense was going to be and he never would tell me what his defense was other than he wanted to take the stand himself. As to what he was going to say, he said, 'You will hear it from the stand,' and I said, 'We had better put on your mother and your two sisters to mitigate some of the testimony that the prosecutor is going to put on about your personal habits, et cetera, and they were agreeable to testifying in his behalf." Counsel admitted that this would have been "for the purpose of trying to secure sympathy." In answer to questions by the court, counsel stated that he "absolutely [did] not" tell the defendant or his mother or sisters that the court had said that on a plea of guilty to the charge of first degree robbery the court would sentence the defendant to five years and would give him credit for jail time. He further testified that he had made no "promise of any kind" to defendant, and that he had not discussed with the court what the sentence would be in the event of a plea of guilty.

The brother of defendant's counsel, also an attorney with extensive experience in criminal trial work and associated with defendant's counsel in the practice of law, had planned to assist in the trial of defendant's case. He confirmed the fact that in their discussions with defendant he refused to tell them what his defense would be but repeatedly told them that "You'll find out when I take the stand." The brother testified that he advised the defendant of the seriousness of the charge against him, that he "thought the jury would become incensed when they heard the facts," and that if his threatened conduct in the courtroom occurred he could look for other charges to be made.

The attorney who was acting as counsel for the State at the trial testified. He stated that he "was not sure" but that "it could be" that "at one time" he said he would recommend a sentence of five years, but he was certain that on November 1, 1961, when asked whether he would make a recommendation his "answer was no, if the defendant wished to plead guilty he could plead guilty as charged and what the court sentenced the defendant was not on the recommendation of the prosecuting attorney." He further stated that he had no conversation with the defendant or with his mother or sisters after defendant had counsel.

At the conclusion of the hearing on the motion the trial court found: (1) the "defendant did not enter his plea of guilty because of fraud and collusion, apprehension and lack of representation by counsel;" (2) there was "no collusion or agreement between counsel for defendant and counsel for the State either prior to or at the time defendant entered his plea of guilty and was sentenced by the court;" (3) at no time was defendant under duress and led to believe by counsel for the state or counsel for the defendant that if he would enter a plea of guilty, because of his youth and because he had no felony record he would receive a five year sentence; (4) defendant was not led to believe by his counsel that he had no defense and there were no mitigating circumstances surrounding such offense; (5) defendant's decision to enter a plea of guilty "was intelligently made and such plea of guilty was entered by defendant after consultation with members of his family and with fully competent counsel;" and (6) defendant entered his plea of guilty "freely, intelligently and voluntarily and that any 'confession' theretofore given by the defendant was not taken into account by the judge of this court either on the question of accepting such plea of guilty or in determining the sentence imposed."

Rule 25.04 provides that "The court may refuse to accept a plea of guilty,

and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." In State v. Blaylock, Mo., 394 S.W.2d 364, and State v. Arnold, Mo., 419 S.W.2d 59, this court has emphasized that the trial court is not relieved of this duty even though the accused is represented by counsel of his choice. Rule 25.04 contemplates that before accepting a plea of guilty the court shall " 'thoroughly investigate the circumstances under which it is made.' " State v. Williams, Mo., 361 S.W. 2d 772. For example, see the thorough examinations made by the court in State v. Williams, Mo., 391 S.W.2d 227, and in State v. Harris, Mo., 382 S.W.2d 642.

We are of the opinion that the investigation shown by the record to have been made by the trial court in this case prior to its announcement that it was accepting defendant's plea of guilty was not as broad and inclusive as contemplated by Rule 25.04. After the trial court was informed that defendant desired to change his plea from not guilty to guilty, only four questions were asked defendant. There was no explanation by the court of the charge to which defendant entered his plea or of the authorized range of punishment, and there was no determination that defendant's counsel had explained these matters to him, and if so, that defendant understood them. The prosecuting attorney was not asked to, and did not, advise the court of the State's version of the facts constituting the basis for the charge, and there was no determination by the court that those facts were admitted by the defendant, and if true that they authorized a conviction of the crime charged. See State v. Blaylock, supra, and State v. Arnold, supra.

We are of the opinion, however, that a subsequent disclosure that the record does not demonstrate a substantial compliance with Rule 25.04 at the time the plea was accepted does not necessarily require, upon application by defendant, that the plea of guilty be set aside. A defend-

ant may not by reason of Rule 27.25 withdraw his plea of guilty as a matter of right. State v. Skaggs, Mo., 248 S.W.2d 635, 636. As stated in State v. Parker, Mo., 413 S.W.2d 489, "The procedure provided by our Criminal Rule 27.25 is appropriate only in extraordinary cases; after sentence, it is available only 'to correct manifest injustice.' " An application made pursuant to Rule 27.25 after the imposition of sentence to withdraw a plea of guilty is necessarily an attack on the validity of that sentence within the meaning of Rule 27.26, and the procedure to be followed is set forth in that rule as amended and effective September 1, 1967. While defendant's motion was filed prior to the effective date of the amended rule, a full hearing with counsel was held and the trial court entered its findings of fact and conclusions of law. When seeking to withdraw a plea of guilty after sentence, and thereby have that sentence set aside, the defendant has the burden to prove by a preponderance of the evidence (Rule 27.26 (f)) the facts alleged in his motion which demonstrate that manifest injustice resulted from the acceptance of his plea of guilty. Rule 27.25. The issues before the trial court at the hearing on the motion, notwithstanding the failure of the record to show a determination prior to the acceptance of the plea as contemplated by Rule 25.04, are whether defendant's plea of guilty was in fact involuntarily made or whether it was made without an understanding of the nature of the charge. If neither of these circumstances is found to have existed no manifest injustice could have resulted from the acceptance of the plea. In the determination of these fact issues the trial court is necessarily clothed with that discretion exercised by a trial court when acting as the trier of facts, and on appeal the review is limited to a "determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Rule 27.26(j).

Notwithstanding the numerous allegations made in his motion, the only conten-

tions presented by defendant on this appeal are that the trial court erred and abused its discretion in denying the motion to withdraw his plea of guilty and to vacate the sentence because (1) "at the time of said guilty plea the court failed to properly inquire as to the voluntariness of such plea," and (2) the plea of guilty "was entered because of promises or misapprehension that [defendant] would receive a sentence of only five years imprisonment." By so limiting the contentions on appeal the defendant has abandoned the other allegations in his motion as a basis for the relief requested. For the reasons previously noted, we agree that the record does not show strict compliance with Rule 25.04, but we are also of the opinion that this deficiency does not require the plea of guilty to be set aside upon subsequent application unless it be established by a preponderance of the evidence that defendant's plea of guilty was entered involuntarily or without an understanding of the nature of the charge for some reason asserted by defendant in his motion.

■ After a full hearing, at which the trial court heard the testimony and had the opportunity to observe the witnesses, it found that defendant was not induced to enter a plea of guilty by reason of promises by defense counsel or the prosecuting attorney, and that defendant intelligently made his plea after consultation with his family and with his "fully competent counsel." The issue before us on this appeal, as previously noted, is to determine whether such findings by the trial court are clearly erroneous.

Prior to the time he entered his plea of guilty defendant may have had or heard some conversation about a recommendation of five years on the part of the prosecutor. However, he, his mother, and his sisters were expressly told prior to his entering his plea that the prosecutor would make no recommendation. At the time his plea was offered to the trial court he affirmatively stated that he knew he was entitled to a trial by jury. He also heard the prosecutor decline to make a recommendation as to punishment, and he heard the trial court order a presentence investigation which meant to any person of reasonable intelligence that at that time the trial court had not determined the punishment. Defendant's evidence to the effect that he was told by his counsel and by the prosecutor that they had talked to the trial court and that he would receive a sentence of five years was expressly contradicted and denied by his counsel and by the prosecutor, and is not convincing to us, as it was not to the trial court.

It may be true that defendant's counsel had counseled him to plead guilty, but there is nothing in the record which even tends to indicate that under the circumstances this was not good advice in view of the fact that defendant had refused to cooperate with his counsel pertaining to his defense, if any, and he had assumed a smartalecky attitude toward his counsel, the court, and the court proceedings. Defendant's counsel expressly testified that he did not tell the defendant that upon a plea of guilty the court would sentence him to only five years, which would have been the minimum, and the prosecuting attorney testified that he had no conversation with defendant, or the members of his family, after defendant obtained counsel. The issue at the hearing became primarily one of who the trial court should believe, and in view of all the circumstances, it cannot reasonably be said on this appeal that the finding by the trial court was clearly erroneous.

The judgment is affirmed.

BARRETT, C., concurs in result.

PRITCHARD, C., concurs.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.