Michael Thomas **BARYLSKI**, Movant-Appellant,

v.

**STATE of Missouri, Defendant-Respondent.**

No. 56559.

Supreme Court of Missouri, Division No. 1.

Dec. 13, 1971.

Gerald A. Rimmel, Leonard Komen, Susman Willer Rimmel & Elbert, St. Louis, for appellant.

John C. Danforth, Atty. Gen., John B. Mitchell, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief, after hearing, in proceeding under Supreme Court Rule 27.26, V.A.M.R., to set aside judgment of conviction and five-year sentence for rape.

Michael Thomas Barylski, along with three other persons, was charged with rape in the City of St. Louis. One defendant was tried and received a life sentence, affirmed by this court in State v. Drope, Mo.Sup., 462 S.W.2d 677. Subsequent to the Drope trial, movant here entered his plea of guilty and was sentenced to five years' imprisonment. His 27.26 motion asserted numerous grounds for relief, but the only ones now urged are that the plea was involuntary because it was induced by what movant believed was a promise by his counsel of probation or parole, and that the judgment should be set aside because of inadequate representation of counsel.

Appellant was 19 years old at the time of his plea. He had a ninth grade education and had no prior criminal record. Through appellant's bondsman, Mr. Paul Dobberstein was employed to represent appellant. At the 27.26 hearing, appellant testified that Dobberstein advised him that he should plead guilty or he "could wind up with what Mr. Drope wound up [with]." He said that Dobberstein told him that on a plea of guilty he could possibly get a life

sentence or could get two years. "He told me I could make parole within a day, I could make parole within a year. My understanding, I would be out in a year of the penitentiary." "He told me that I had a good chance of making probation and I would make parole within a year, that I could make it within a day, that I would be out within a year. That was my understanding, I would be out within a year if I did get the five." In response to questions, the movant stated: "I thought I had a chance to make probation possibly."

"Q Are you stating to the Court now that somebody promised you something if you would plead guilty?

A Yes, sir.

Q Who was it who promised you something?

A Mr. Dobberstein; Paul Dobberstein.

Q What did he promise?

A He told me that I could be out of the penitentiary within a day or within a year. It was my understanding I'd be out in a year at the most.

Q He promised you this, or was it in the form of advising you what could happen?

A I believe it was a promise."

Dobberstein testified as follows:

"A I can't tell you exactly, but basically I told him that I thought that we had a good possibility of getting a probation whereby he would be released right from the courtroom, and in the event that he did not get probation, that I thought he would be in Jefferson City no more than a year before he would make a parole. I also told him that he was eligible for a parole as soon as he got up there.

"Q Did you advise him that, your opinion, it would be his best interest then to enter a plea of guilty?

"A Yes, I did.

"Q Did you tell him in, that in your opinion he could not be acquitted if the case were tried?

"A I told him something to that effect. I don't recall the exact words.

\* \* \* \* \* \*

"Q Did Mr. Barylski believe that he was going to get out on probation within a day or so after entering his plea of guilty?

"A I don't believe he did.

"Q Did you promise him that he would?

"A No, I didn't.

\* \* \* \* \* \*

"Q Did you at any time tell Mr. Barylski he would be out of jail within a year if he entered a plea of guilty?

"A I told him there was a good possibility that he would make parole within a year if he did not make probation originally.

"Q Did you explain to him the difference between probation and parole?

"A Yes.

"Q What did you tell—

"A I told him that the probation would be from Judge McGuire and that if he did not make probation that he would be eligible for parole after going to the penitentiary, and the Parole Board would decide this.

"Q Did you lead him to believe that Judge McGuire would seriously consider probation for him?

"A Yes. I believe I did.

"Q Was there some basis for this belief on your part?

"A Yes.

\* \* \* \* \* \*

"Q When you were discussing the possible alternatives in the case, did you advise him that you could not make any promises or you could not speak for anybody other than yourself?

"A Yes, I did.

"Q In other words, do you feel that Mr. Barylski felt that you were speaking for Judge McGuire or for the Circuit Attorney's Office?

"A Not Judge McGuire, but perhaps for the Circuit Attorney's Office.

"Q Did he ever indicate anything to you in this way?

"A No, but I told him what the Circuit Attorney's, what their recommendation would be to Judge McGuire, and I—

"Q I'm sorry.

"A I did tell him that unless there was something very unusual that the Court would probably go along with this recommendation."

On basically the foregoing record, together with the transcript of the proceedings at the time of the plea (not claimed to have been lacking in compliance with Supreme Court Rule 25.04, V.A.M.R.), the trial court made the following finding:

"[T]he Movant voluntarily, willingly, and understandingly, on the advice of competent counsel and without coercion or misrepresentation, entered a plea of guilty to the charge of rape (forcible) on September 29, 1969;

"Movant contends that his plea of guilty was obtained by trickery and false and misleading promises. A transcript of the plea of guilty shows that the judge questioned Movant extensively in an endeavor to ascertain that he understood what he was doing and that he was entering the plea voluntarily. Movant stated that he understood the charge, the range of punishment, and was entering the plea voluntarily. The judge specifically asked the Movant if he understood that the Court was making no promises whatsoever in the case. The Movant answered that he understood this. The Movant stated he was entering the plea of guilty on advice of counsel and that he was satisfied with his counsel's advice. Movant now contends that he entered the plea of guilty for the reason that his lawyer promised him he would receive a parole within a year. Mr. Paul Dobberstein, Jr., Movant's counsel, testified that he advised Movant that it was for his best interest to plead guilty, and receive a five-year sentence and take his chances on parole. One of the co-defendants in the case had just received a life sentence for the same offense. It appears that Mr. Dobberstein's advice was based on sound judgment. This Court does not believe that Mr. Dobberstein ever guaranteed Movant that he would receive a parole within a year. * * *"

The above-quoted portions of the testimony of Mr. Dobberstein at the 27.26 hearing support the trial court's findings and they are, therefore, not clearly erroneous.

Relying upon State v. Rose, Mo.Sup., 440 S.W.2d 441, appellant asserts that the trial court erred in its findings because "Movant had been influenced unduly by hope and fear and what he believed to be promises of parole or probation." In Rose this court did hold that misleading of a defendant to enter a plea of guilty by promises of his attorney for probation could cause such plea to be involuntary. However, in Rose, it was pointed out that the subjective test to be applied in such a situation had to be viewed in the light of the reasonableness of the claimed belief. In Rose, the trial court had made no finding on the claim that defendant's attorney had made promises which induced the plea. Here, the trial court found that the promises asserted by movant had not, in fact, been made. This amounts to a finding that there was no reasonable basis for what movant now asserts to have been his belief at the time of the plea, entitling the trial court to disregard the now asserted belief. State v. Rose, 440 S.W.2d 445.

■ The trial court's finding that the plea was willingly and understandingly made is adequately supported by the evidence, including the transcript of the sentencing proceedings and the testimony of movant's attorney. He had a ninth grade

education and, although he was not familiar with judicial proceedings, he gave no evidence at the time of lack of comprehension of what was occurring. The trial court's finding on the issue is not clearly erroneous. Crosswhite v. State, Mo.Sup., 426 S.W.2d 67; State v. Mountjoy, Mo.Sup., 420 S.W. 2d 316.

On the issue of inadequate representation by counsel, a guilty plea having been entered, determination of the adequacy of representation is immaterial "except to the extent counsel's incompetence bears on the issues of voluntariness and understanding. Kress v. United States, 411 F.2d 16, 22 (8th Cir., 1969)." State of Missouri v. Turley, 443 F.2d 1313, 1316 [1, 2] (8th Cir., 1971). The claim of inadequacy stated in the motion was based upon the complaint that counsel filed no "writs or motions" on behalf of defendant. The movant offered no testimony as to how this claimed inaction on the part of his attorney affected the voluntariness of his plea and his understanding of his action. In this court, appellant has endeavored to expand the charge to encompass failure of counsel to make adequate investigation. The attorney testified that he had obtained movant's version of the facts. In the circumstances of this case, no claim of inadequate assistance may be based upon failure of counsel to conduct further independent investigation. State of Missouri v. Turley, supra. Goodwin v. Swenson, 287 F.Supp. 166 (W.D., Mo.), relied upon by movant, is clearly distinguishable from the situation here presented.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.