**Harry J. McNEAL, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. KCD26468.**

Missouri Court of Appeals, Kansas City District.

Dec. 3, 1973.

William E. Erdrich, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Karen I. Harper, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

SWOFFORD, Judge.

This is an appeal from a judgment and order of the court below entered November 3, 1972, denying appellant's *pro se* motion to withdraw a guilty plea under Rule 27.25 V.A.M.R. *and* to vacate judgment and sentence, and for other relief (inappropriate for such a motion and therefore disregarded here) under Rule 27.26 V.A.M.R. Upon a plea of guilty, the appellant was sentenced on July 24, 1970 to nine years for the offense of stealing over $50.00. He urges that the court below erred in denying him relief under his motion, for two reasons. *First,* that his plea of guilty "was defective in that appellant did not plead intelligently and with a full understanding of the consequences". *Second,* that he received ineffective assistance of counsel. We find no merit in either contention.

The transcript before us contains the record of four separate proceedings in the court below, namely, on June 3, 1970, July 24, 1970, April 26, 1971, and November 3, 1972, each of which will be hereafter separately noted.

The transcript of the proceedings had when appellant's plea of guilty was entered on June 3, 1970 conclusively shows from the appellant's own statement to the court that he was involved in a first degree robbery in St. Joseph, Missouri on May 12, 1970. In response to the court's question, "Now tell me what you did", he stated that on May 12, 1970, he and two companions drove to St. Joseph from his home in Kansas City, Missouri and went to a place he described as the "Legion". They stayed there for a while and "got some pills". Appellant and his companions took about 9 or 10 "red" pills, not further described except that they were supposed to make one "high." They left the "Legion" to get ciga-

rettes and enroute stopped by one of the companion's home where a pistol was obtained. Appellant took the pistol from his companion. They then went to a store known as Arnold's Sundries located at 14th and Penn in St. Joseph and purchased some gum and cigarettes. As they were leaving, the appellant "pulled the pistol" and said to the storekeeper, Arnold Levy, that "it was a robbery" and directed one of his companions to "get the money". His companion took $250.00 in cash and the appellant and his companions then started by automobile to Kansas City.

They were stopped by police because of a defective tail light. The police then noticed that the car carried an expired license plate and then they heard a report over the radio with reference to the robbery at Arnold's. The appellant and his companions were taken to the Buchanan County Jail and a first degree robbery charge was filed against appellant and Ronald Thomas and Tony Gannaway, his companions. An appointment of counsel was made by the magistrate.

At the time of this robbery, the appellant was 17 years of age (he became 18 on August 2, 1970) and was then on parole from a charge of stealing over $50.00 in money "from a man at his place of business". While no detail appears in the transcript as to his education, it is apparent from his responses and his *pro se* motion that he is a young man of intelligence and awareness.

The record shows that appellant's court-appointed counsel examined the prosecuting attorney's and police file, made an independent investigation of the facts, and had numerous conferences with appellant and Thomas, whom he also represented as appointed counsel. This attorney quite logically concluded that the state had a strong case of first degree robbery and he and the appellant discussed the possibility of getting the charge reduced to stealing over $50.00 in return for a guilty plea. Counsel was successful in these attempts

and preliminary hearing was waived, and on June 3, 1970, appellant and his counsel and an assistant prosecuting attorney appeared before Judge Connett and appellant entered his plea of guilty to the lesser charge.

The transcript of this hearing shows not only that the defendant gave a lucid, detailed and voluntary description of the robbery, but also unequivocally stated that it was his wish to enter the guilty plea; that he had fully discussed the matter with his counsel; that he had received no promise for a particular sentence; that he understood the court could sentence him "anywhere from jail time to 10 years"; that he understood he could have a jury trial and did not want it, and that he still wished to enter his guilty plea. The state made no recommendation as to sentence, but during the course of this hearing upon questioning by the court, appellant admitted the prior conviction for stealing and thereupon the court ordered a presentence investigation.

On July 24, 1970, the appellant came up for judgment, sentence and commitment, and the court stated that the presentence investigation was "very bad" and imposed the sentence complained of in appellant's motion.

On April 26, 1971, appellant appeared in the court below, with new court-appointed counsel, for a hearing on a Rule 27.26, V. A.M.R. motion which he had filed and which was apparently based upon substantially the same grounds as the present motion. Upon this occasion, appellant requested, and was granted, permission to withdraw his motion because he wanted to avoid the possibility of the first degree robbery charge being refiled. He stated "We were promised no more than five years and maybe a parole" by his first court-appointed counsel. He further stated that he knew he "wouldn't receive no parole" because of his past record. The following appears in the record:

"THE COURT: Well, what did you think the sentence was going to be after I ordered a presentence investigation?

"MR. McNEAL: No more than seven years—six years or five years. But I had a feeling I wouldn't get five years. I thought I would get six or seven years, a little bit more than Thomas, but I didn't think—"

At this hearing, the state's attorney said that if the Rule 27.26 motion was sustained, it was the intention of the state to file a first degree armed robbery charge against the appellant.

On August 28, 1972, the appellant filed *pro se* the present motion and an evidentiary hearing was held in the court below on November 3, 1972, the appellant appearing in person and by another (third) court-appointed counsel. The pertinent evidence adduced at this hearing may be summarized as follows:

The appellant testified that his counsel and he discussed the possibility of getting the charge reduced and the possible sentence he would receive on a guilty plea to the reduced charge. His counsel, after conferences with the prosecuting attorney, advised him that he could get the charge reduced to stealing over $50.00, if appellant would plead guilty, but that the prosecutor would not make any recommendation as to sentence. He stated that his counsel advised him that, "We would get no more than five years and maybe a parole"; that he (counsel) had great doubt about probation because of his past record; that he asked counsel if he was sure that he would get no more than five years and was told "don't worry about it, just leave it up to me"; that he would have to tell the judge that no promises had been made in order for the guilty plea to be accepted, and that he would not have pled guilty except for what he had been told by his counsel.

On cross-examination, the appellant stated that he knew he had no chance of parole; that he knew the judge would set the sentence; that the judge told him he could get up to 10 years, and that he had the right to a jury trial; that he did com-

mit the crime charged and that he had withdrawn his first Rule 27.26 motion.

Appellant further stated in response to questions from the court that he had made the statement in the former hearing above quoted and then stated:

"What I meant when I made that statement is that was what was promised, five, *but I didn't rely upon it,* but (sic) I had been in trouble before. I thought maybe I would get a year more, six or seven, but I didn't think I would get nine.

Q (By the Court): You were promised five *but you didn't rely upon the promise;* you just thought that you were going to get a year or two more than Thomas did?

A *Yes,* in the sentence." (Emphasis supplied)

Thomas, charged with the same offense and represented by the same court-appointed counsel, testified that at a joint conference, counsel had stated that the prosecutor had "guaranteed" that they would get no more than five years.

The first court-appointed counsel involved in this matter testified as a state's witness at the hearing. The matter of attorney-client privilege was injected and in the colloquy that followed the then counsel for appellant stated to the court:

"Judge, the applicant is not attacking on behalf of Mr. (original counsel) or whether or not he was competent. * * * Mr. ———— (original counsel) is not on trial here today. I think the Court's argument would be fine if there was an application concerning Mr. ———— (original counsel)."

Upon a ruling by the court that the first counsel (charged with ineffective service) could testify, he related that he had thoroughly investigated the prosecutor's and police files and conducted an independent investigation; that appellant had told him

of his involvement in the crime; that he had formed the unequivocal opinion that appellant would be found guilty of first degree robbery and so advised appellant; that he secured the agreement of the prosecutor to reduce the charge to stealing over $50.00, and was of the opinion that appellant should plead guilty to the reduced charge and so advised the appellant; that appellant agreed with his recommendation and independently made the final decision to enter the guilty plea; that he never told appellant that he would not get more than five years, but told him the sentence was up to the judge and that he never told appellant to answer any questions falsely at the plea hearing. He further testified that in his opinion, the appellant at all times was competent to understand the proceedings and conversations over the period of time involved.

The prosecuting attorney of Buchanan County testified that he had advised counsel for appellant that the state would make no recommendation as to sentence on the reduced charge. He further stated that he had not made any threats to appellant (as appellant claimed) if he refused to testify in the Tony Gannaway trial.

The trial court at the conclusion of the hearing denied the motion and made specific findings that the appellant had effective assistance of counsel; that no promise had been made to appellant that he would be sentenced to no more than five years; that even if such assurance had been made, the appellant by his own testimony had not relied upon it, and that the guilty plea was voluntary and intelligently made with full understanding of the consequences.

 In ruling on appellant's motion, the trial court could take into consideration the evidence at the plea hearing together with the evidence adduced before him on the hearing on the motion to vacate. State v. Mountjoy, 420 S.W.2d 316 (Mo.1967); State v. Davis, 438 S.W.2d 232, 235 (Mo. 1969); Flood v. State, 476 S.W.2d 529, 533–534 (Mo.1972). Unlike the Federal Rule 11, he was not specifically required to pursue any particular procedure or question appellant according to any particular formula.[1] Flood v. State, supra. The scope of his obligation was to determine to his own satisfaction that the plea of guilty was knowingly, voluntarily and understandingly made, State v. Mountjoy, supra; Flood v. State, supra; McKnight v. State, 497 S.W.2d 201 (Mo.App.1973).

The appellant appeared before the court below on at least four separate occasions over a period of in excess of two years, the records of which come to us in the transcript herein. The court specifically found that appellant's guilty plea to the reduced charge met the requirements of a voluntary, knowing plea, with full understanding of the consequences, as vouchsafed by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and the decisions of the Missouri Supreme Court. Our function therefore is to closely scrutinize the record and the law to be assured that under our Rules 25.04, 27.25 and 27.26, V.A.M.R., no manifest injustice appears, and that the trial court's order denying the motion was not clearly erroneous. This, we have done, and we are convinced that the trial court's conclusion and finding as to the guilty plea to the reduced charge was based upon substantial evidence, was proper, no manifest injustice appears, and such result was not clearly erroneous. None of the authorities cited by appellant in anywise diminish or weaken this view.

One other factor in this area deserves mention, and to some degree it involves the credibility of the testimony. The trial

1. In a separate concurring opinion in *Flood*, Donnelly, J., set forth the recommended procedure for conducting a guilty plea proceeding as approved by the federal court in United States v. Cody, 438 F.2d 287 (8th Cir. 1971) which, while not mandatory under our procedure, would, if followed by the trial courts, obviate the necessity of setting aside guilty pleas except in very unusual circumstances.

court found that counsel did not promise the appellant that he would receive no more than five years or that the prosecutor has "guaranteed" this result. "This amounts to a finding that there was no reasonable basis for what movant now asserts to have been his belief at the time of the plea, entitling the trial court to disregard the now asserted belief." Barylski v. State, 473 S.W.2d 399, 401 (Mo.1971); Moore v. State, 488 S.W.2d 266 (Mo.App. 1972); Winford v. State, 485 S.W.2d 43, 49 (Mo. banc 1972).

There is no claim here by the appellant that either the court below or the prosecutor made any assurances or promises directly to him, nor that the court was involved in (or indeed aware of) any plea bargaining. So the ultimate conflict arises between the testimony of the appellant and that of his then counsel as to promises or assurances upon which appellant relied, to his detriment. We defer, as we should, on this record, to the trial court's finding as to the credibility to be accorded these conflicting statements. But even aside from the trial court's appropriate and supported finding in this regard, it is conclusively apparent that appellant, according to his own sworn testimony, did not rely upon the alleged promises and was therefore not misled or deceived. He took his chances,and as was stated in Mick v. State, 487 S.W.2d 452 (Mo.1972), l.c. 454:

> "A disappointed hope of a lesser sentence than that actually received does not render a plea of guilty involuntary when the hope was not based upon positive representations upon which the defendant was entitled to rely."

■ There remains the claim that appellant received ineffective assistance of counsel. A mere statement of this alleged error when viewed against the background of this record destroys any validity or weight which it could possibly merit. In the first place, the burden was upon appellant to establish a serious dereliction of duty on the part of his counsel which materially affected his substantial rights and showed that his guilty plea was not an intelligent or knowing act. Lee v. State, 460 S.W.2d 564 (Mo.1970); Barylski v. State, supra; Hall v. State, 496 S.W.2d 300 (Mo.App.1973). The dereliction should be of such grave nature as to obviously result in a miscarriage of justice. State v. Caffey, 457 S.W.2d 657 (Mo.1970). Matters of counsel's strategy or judgment, even though wrong, do not support such a charge. Tucker v. State, 481 S.W.2d 10 (Mo.1972); Jackson v. State, 465 S.W.2d 642 (Mo.1971); Hall v. State, supra.

■ In the case at bar, no such ineffective assistance of counsel can be gleaned from the record by the most partisan advocate. Appellant's counsel not only interviewed his client on numerous occasions and thereby obtained his account of his participation in the robbery, but he also examined all official files and made his own independent investigation. He thereupon wisely concluded that the appellant could be convicted of first degree armed robbery, a crime which then carried a penalty of 5 years to death. Section 560.135 RSMo 1969, V.A.M.S. With the consent of his client, he then entered into negotiations with the prosecutor to have this charge reduced to stealing over $50.00, a crime carrying a penalty of from two to ten years. Section 560.161 RSMo 1969, V.A.M.S. He was successful in these efforts and advised his client to accept the reduced charge on a plea of guilty, but left the ultimate decision to appellant.

We can only conclude that counsel demonstrated an unusual amount of ability, energy and patience and arrived at a very advantageous result in behalf of his client. Carpenter v. State, 479 S.W.2d 466 (Mo. 1972). The claim of ineffective assistance of counsel is wholly without merit.

Accordingly, the judgment below is affirmed.

All concur.