Allen E. BELLEW, Appellant,

v.

Harold R. SWENSON, Warden, Respondent.

No. 55242.

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1970.

Landon H. Rowland, Charles E. Patterson, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

SEILER, Presiding Judge.

Petitioner appeals from the overruling by the trial court of his motion to set aside the judgment of conviction of armed robbery and for permission to withdraw his plea of guilty on the ground that the alleged plea was not freely and voluntarily made and that the trial court failed to comply with Rule 25.04, V.A.M.R. There was an evidentiary hearing conducted by Judge Elliott in the Circuit Court of Clay County after Judge Rooney, who had taken the plea, disqualified himself. By agreement, Judge Elliott also had the transcript of the evidence in an earlier hearing in a habeas corpus proceeding held in the United States District Court for the Western District, at Kansas City. The federal hearing was terminated before conclusion, to permit full state court exhaustion under a new motion, which has now reached this court on appeal.

On November 28, 1961, petitioner pleaded guilty to a charge of armed robbery growing out of the robbery of the Farley State Bank and was sentenced to 30 years confinement in the state penitentiary.

In the hearing before Judge Oliver in federal court, the witnesses were petitioner, Judge Rooney, and petitioner's attorney at the time of the guilty plea, Roy W. Brown. In the hearing before Judge Elliott the witnesses were Charles Sales, Jr., a Clay County deputy sheriff, Douglas Seneker, a former Clay County deputy sheriff, Robert P. C. Wilson, III, prosecuting attorney at the time of the guilty plea, and, again, petitioner.

Judge Elliott overruled the motion, after making findings of fact and conclusions of law, among which were these:

"1. That Petitioner was charged with the commission of robbery in the first degree and that he was aware of the nature of the offense with which he was charged.

"2. That Petitioner was represented by counsel of his own choosing, Roy W. Brown, from the day after his arrest up to and including the day upon which he entered his plea of guilty.

\*　　\*　　\*　　\*　　\*　　\*

"4. That on said date [November 28, 1961], Petitioner, by and through his attorney, withdrew a plea of not guilty, waived the reading of the information and entered a plea of guilty to the crime of robbery in the first degree.

"5. That Petitioner, when inquiry was made, responded that he was guilty of the crime with which he was charged.

"6. That Petitioner, prior to the time that he entered a plea of guilty, was aware of the maximum and minimum sentence which could be imposed for the commission of robbery in the first degree.

"7. That there has not been sufficient credible evidence adduced to sustain the credible of proving that Petitioner's plea of guilty was entered as a result of any inducements, threats, misrepresentations, or coercion exerted upon Petitioner either by the court, the attorneys representing the State, his own attorney, or any of the various law enforcement personnel who had occasion to come into contact with the Petitioner.

"The plea of guilty * * * was freely and voluntarily entered as required by the Supreme Court Rule 25.04. Further, Petitioner did not sustain his burden of proving that the plea was not freely or voluntarily entered. Even if petitioner had sustained his burden of showing that Supreme Court Rule 25.04 had not been complied with, it is the conclusion of this court that there was no manifest injustice resulting from the plea of guilty or the events surrounding it * * *."

Petitioner's contention on appeal is that Judge Elliott's findings of fact are contrary to the record of the trial and the credible testimony adduced and that, therefore, the refusal to permit petitioner to withdraw his plea of guilty was a clear abuse of judicial discretion. The state's position is that despite the fact there is no transcript of the proceedings during which petitioner's plea of guilty was accepted, nevertheless a review of the entire record in the case indicates that adequate and substantial factual support exists for the trial court's determination that petitioner has not sustained his burden of proof and that no manifest injustice occurred in accepting his plea of guilty.

Defendant insists he is innocent of the crime charged. He testified he was in deadly fear of the two deputy sheriffs who took him from the jail to the court house on the day of his plea and who told him that if he did not plead guilty they would shoot him to save the county the expense of a trial, would say that he had tried to escape again (petitioner had escaped from the Clay County jail for a period of a week or so while awaiting trial) and that if he got near any members of his family in the court room the officers would cut him in half; that he actually did not plead guilty himself but that his lawyer answered the judge's questions and entered a plea of guilty; that the petitioner was not asked at any time by Judge Rooney whether he was acting under compulsion of threats or fear or whether his plea was made voluntarily and with a full understanding of what the consequences were.

Judge Rooney's testimony was that he had only a hazy recollection of the sentencing of petitioner; that petitioner was represented by employed counsel and at that time it was Judge Rooney's practice not to make a record of proceedings in such cases; that on pleas of guilty to serious charges there were times when he would interrogate the lawyer "considerably" in the presence of the client, but it was not his practice to question the authority of the attorney to enter a plea of guilty. As to whether he interrogated petitioner about the plea, Judge Rooney said, "It would be very doubtful if I did. I may have talked to the attorney that represented them in the presence of their client." Judge Rooney testified it was not brought to his attention that petitioner had been threatened or coerced. He said had he had any inkling of any such thing he would have questioned counsel at great length and would have asked counsel to permit him to interrogate the defendant about these matters.

In the federal court hearing, Mr. Brown testified about visits with petitioner in jail prior to going to court. The questions never did get to the point of what Brown's recollection was of what took place in court on the occasion of the guilty plea. Questions were started to be put to Mr. Brown on whether petitioner had declared his innocence and Brown's testimony was discontinued pending resolution of the question of how far petitioner had waived the attorney-client privilege and whether the state was attempting to use the inquiry as a discovery proceeding in case it turned

out there had to be a trial of the charge against petitioner. In the hearing before Judge Elliott, Mr. Brown was not called. Judge Elliott offered to call Mr. Brown to the stand as the court's own witness, but neither side accepted the offer.

The prosecuting attorney, called by the state as a witness, testified that when petitioner was asked what his plea was, he said, "I am guilty, I plead guilty"; that Judge Rooney asked defendant if he knew the consequences of such a plea and defendant nodded yes; that defendant knew what the penalty could be, understood he was pleading guilty under the habitual criminal act to the crime of armed robbery in the first degree; that Judge Rooney inquired if it was his own voluntary plea made after he had consulted with counsel; whether threats, pressure or undue influence had been exerted upon him, to which petitioner said, "No, I am guilty, I plead guilty." As opposed to this, however, the prosecutor also testified that he did not remember whether Judge Rooney asked about threats or duress, but he probably did—"I think he probably covered the whole field there."

Deputy sheriff Sales, who, along with deputy Seneker, transported defendant from the Jackson County jail to the court room at Liberty, testified that "his attorney pled him guilty the first time", but that later defendant did state he was guilty because Judge Rooney told him he would have to answer the question so he could be heard. Sales testified that Judge Rooney asked defendant if he had been threatened, if anybody had promised him anything, and defendant said they had not. Sales said he believed that Judge Rooney asked defendant's attorney if he could talk to his client, "but I'm not sure".

Former deputy Seneker testified. He said defendant did not talk up very loud in court and it was hard to hear exactly what he was saying. Seneker could not recall the exact words of Judge Rooney but testified it dealt with defendant's understanding of the effect of his guilty plea "and what have you". He recalled that defendant re-

sponded affirmatively to the questions put by the judge. He recalled no further conversation between the judge and the defendant and said, "My memory is hazy".

Petitioner testified before Judge Elliott that at the time he was sentenced he did not know what the range of punishment was for conviction of armed robbery. But in his earlier testimony before Judge Oliver, he testified that he knew the length of time he could be sentenced to on a plea of guilty to the charge.

The situation is one which we commonly see where there is no transcribed record of what took place at the time of the guilty plea and we have conflicting accounts from the witnesses who were there. Judge Elliott, in his position as trier of the facts, resolved the conflict in favor of the witnesses produced by the state. We cannot say that his findings are clearly erroneous or that there is an evidentiary void with respect to any of the essential issues. Although Judge Rooney, who took the guilty plea, could not recall details of the occasion, from what the prosecutor and the deputy sheriffs said, Judge Rooney did make inquiry as to threats, fears, defendant's understanding of what he was doing, the voluntariness of his acts, and whether or not he was guilty. Deputy Sales specifically denied making any threats to defendant, although he somewhat weakened his denial by adding an unsolicited explanation by way of justification, saying, "I had no reason to threaten him. He'd done nothing to me." Former deputy Seneker also denied making any threats to defendant.

Defendant's appointed counsel on this appeal has done a good job of advancing defendant's contention that it is the responsibility of the court and the prosecution to see at the time the guilty plea is entered and before it is accepted that the plea is made voluntarily, with understanding of the nature of the charge. But regardless of what the situation might be if the record were void of evidence from the state as to what took place when the guilty plea was

entered, the fact is that on the record before us the state produced testimony on which Judge Elliott could, if he came to the determination that the testimony offered by the state was the correct version of what happened, find as he did that the plea of guilty accepted from petitioner was freely and voluntarily entered, as required by Rule 25.04. He found, in addition, that petitioner did not sustain his burden of proving that the plea was not freely or voluntarily entered, which we take to mean a finding that he did not accept the credibility of the defendant's testimony as to threats and failure by the court to make inquiry of his understanding of what was going on.

We regard as superfluous and not necessary to the decision reached, in view of the findings of fact and conclusions of law earlier stated, Judge Elliott's comment that even if petitioner had sustained his burden of showing that Rule 25.04 had not been complied with, there was nevertheless no manifest injustice resulting. While we do not know for sure the basis for this observation by Judge Elliott, we assume it rests on a belief that defendant had personally admitted guilt before Judge Rooney. However, it is because the entering of a plea of guilty is so fateful and involves the waiver or relinquishment by the defendant of so much, that the failure of the trial court (if so) to make certain there is no doubt the guilty plea is voluntary and intelligent at the time it is accepted necessarily does an injustice to the defendant. To say that there is no manifest injustice regardless of whether the plea is voluntary, for the reason that defendant has said, "Yes, I am guilty", is to subscribe to the view that the end justifies the means. The reasons for requiring a demonstration of the existence of a voluntary and intelligent plea of guilty under Rule 25.04 before it is taken, are not found in some arcane, recondite, and heretofore not generally understood interpretation of the rule, but in the plain meaning of certain fundamental prerequisites of justice which both preceded and engendered it. First, one is presumed innocent until proven guilty beyond reasonable doubt. Can a plea of guilty, which constitutes a waiver of that presumption, and relieves the state of its burden of proof, be accepted in the absence of a clear demonstration that it was, at the time of the acceptance of the plea, voluntary and intelligent? Second, no man can be compelled to testify against himself. This requirement is the inevitable corollary of the first proposition. When one so extraordinarily waives his right to silence by admitting through a plea of guilty each and every element of the offense of which he is charged, the state and the court must insure at the time that such waiver is made that no doubt exists as to whether that plea is voluntary and intelligent. Finally, by entering a plea of guilty, two other fundamental rights are waived: the right to confront one's accusers and the right to trial by jury. It is an injustice to lose all this unless it is done by a voluntary and intelligent choice, shown to be so at the time.

Our Rule 25.04 goes back to 1953, long prior to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 and Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. From time to time this court has declared what must be done to comply with it. In State v. Williams (Mo.Sup. banc) 361 S.W.2d 772, 775: "We have said: 'The guiding rules are that a plea of guilty is but a confession in open court. Like a confession out of court it should be received with caution. It should never be received unless it is freely and voluntarily made. * * *'" This was repeated in State v. Blaylock (Mo.Sup.) 394 S.W.2d 364, 367. In State v. Smith (Mo.Sup.) 421 S.W.2d 501, 504, the court declared that Rule 25.04 requires that the trial court make the determination that the plea is made voluntarily *at the time the plea is taken,* that *the trial court* must ascertain the defendant understood the consequences of the plea of guilty when it was accepted. In State v. Roach (Mo.Sup.) 447 S.W.2d 553, 556–557, we said: "* * * Before accepting a plea of guilty it is the duty of the trial court to ascertain that accused

understands the consequences of his plea of guilty * * *. Criminal Rule 25.04 requires that at the time the plea is taken the trial judge make a determinaton that the plea is made voluntarily. * * * "

We, therefore, cannot agree with the implication of that part of Judge Elliott's conclusions that even if petitioner had shown that 25.04 had not been complied with, it would be immaterial. However, Judge Elliott did not rest his decision on this point, and, to the contrary, expressly found the plea of guilty was freely and voluntarily entered as required by Rule 25.04, and in this regard we cannot say that his findings and conclusions are clearly erroneous, Rule 27.26(j).

The judgment is therefore affirmed.

All of the Judges concur.