Earnest D. **LANSDOWN**, Movant-Appellant,

v.

**STATE** of Missouri, Defendant-Respondent.

No. 55882.

Supreme Court of Missouri,
Division No. 1.

Nov. 8, 1971.

Almon H. Maus, and E. L. Monroe, Monett, Missouri for movant, Earnest Lansdown.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief under Supreme Court Rule 27.26, V.A.M.R. Defendant sought to set aside conviction for first degree murder, entered on plea of guilty. Appellant here contends that his guilty plea should not have been accepted because it was equivocal and that the plea was involuntary as a matter of law because of lack of understanding of the law and of the nature of the charge, and because of fear.

The charge against appellant arose out of the killing, on May 25, 1968, of a Greene

County deputy sheriff who chanced to drive into a service station while a holdup was in progress. Appellant and Russell Ray Maggard were in the station office, with Maggard holding a pistol on the attendant. Two deputies drove up in a car and Maggard started shooting, fatally wounding one of the deputies. Appellant, unarmed, had driven Maggard and his brother to the station. Appellant drove away after the shooting and was arrested at his residence in Springfield.

Appellant was taken to the Greene County jail and after being booked was put in a "dry tank," a cell some eight by six feet, with a bed, a bench and a toilet stool which was flushed from outside the cell. He remained in the dry tank until he was taken to the Missouri State Penitentiary in January, 1969.

A charge of first degree murder was filed against appellant in the Greene County Magistrate Court on May 25, 1968. Appellant's family employed Scott Traylor, a Springfield attorney, to represent appellant. Traylor represented him at the preliminary hearing, held June 12, 1968, following which appellant was bound over to the circuit court. An information charging appellant with murder in the first degree was filed shortly thereafter. In September, Traylor filed a motion for change of venue which was sustained and the case was sent to Barry County where it was set for trial December 17, 1968 in the event State v. Maggard did not go to trial on that date.

In November, 1968, appellant wrote the Barry County Circuit Court expressing dissatisfaction with Traylor. Traylor filed a motion for permission to withdraw which was sustained on December 3, 1968 and the case set for trial March 26, 1969. At the time of presentation of the motion to withdraw, appellant advised the court that members of appellant's family obtained the services of Mr. Roger Barbieri of Kansas City to represent appellant. Barbieri visited appellant in the Greene County jail and discussed the case with the prosecuting attorney.

On December 17, 1968, Barbieri discussed the case with appellant. The subject of a plea was discussed and appellant decided to enter a plea of guilty. On that same date, appellant and Maggard both appeared in the Barry County Circuit Court and both entered pleas of guilty. See Maggard v. State, Mo.Sup., 471 S.W.2d 161, decided September 13, 1971. With respect to appellant's plea, the following occurred:

"COURT: Mr. Lansdown, on December 3, 1968, you appeared before this Court, at which time the motion or application of your attorney, Mr. Traylor, to withdraw as counsel for you was taken up. At that time you requested also that your attorney be permitted to withdraw, and you advised this Court that your family had hired an attorney for you to represent you in this case. Now, at this time you are appearing here today with that attorney, is that right?

"MR. LANSDOWN: Yeah.

"COURT: Mr. Barbieri, you are the attorney of record for this defendant, Earnest D. Lansdown?

"MR. BARBIERI: Yes, sir.

"COURT: Mr. Barbieri, do you have any statement you desire to make at this time?

"MR. BARBIERI: Yes, Your Honor. At this time the defendant wishes to change his plea of not guilty to one of guilty. The defendant at this time wishes to plead guilty as charged.

"COURT: Mr. Lansdown, you have heard your attorney's announcement that you desire to change your plea of not guilty to a plea of guilty. You heard your attorney's statement in that regard?

"MR. LANSDOWN: Yes.

"COURT: Is it your desire at this time to withdraw your plea of not guilty and enter your plea of guilty to the charge of first degree murder?

"MR. LANSDOWN: Yeah.

"COURT: Mr. Lansdown, you understand that no one can enter a plea of guilty

for you, but that you are the only one who can enter a plea on your behalf? You understand that?

"MR. LANSDOWN: Yeah.

"COURT: And do you further understand that you have a right to a trial of your case before a jury, and that the jury's verdict would have to be unanimous as to your guilt and that you would have to be found guilty beyond a reasonable doubt. Do you understand all of those things?

"MR. LANSDOWN: Yes.

"COURT: And do you understand that your attorney would have a right to cross examine each and every witness appearing on behalf of the State of Missouri, and in fact have the right and opportunity to examine any witness appearing in the trial of your case?

"MR. LANSDOWN: Yes.

"COURT: Mr. Lansdown, do you further understand that there are only two penalties that the Court can impose on a plea of guilty to a charge of first degree murder, and they are either death or life imprisonment? Do you understand that?

"MR. LANSDOWN: Yes.

"COURT: Mr. Lansdown, have any promises been made to you to get you to enter a plea of guilty to this charge against you?

"MR. LANSDOWN: No.

"COURT: Or any inducements made to you?

"MR. LANSDOWN: No.

"COURT: Or have any threats been made to you?

"MR. LANSDOWN: No.

"COURT: You are entering your plea of guilty because you are guilty, is that right? You are entering your plea of guilty because you are guilty of this offense you are charged with?

"MR. LANSDOWN: Yes.

"COURT: Mr. Lansdown, have you had ample time to discuss this matter with your attorney?

"MR. LANSDOWN: Yes.

"COURT: And do you feel he has fully advised you as to all of your rights in connection with this matter?

"MR. LANSDOWN: Yes.

"COURT: Mr. Barbieri, do you feel you have been able to explain fully to the defendant, Earnest D. Lansdown, all of his rights in connection with this matter?

"MR. BARBIERI: Yes, Your Honor, I do.

"COURT: And do you feel and believe that the defendant fully understands those rights?

"MR. BARBIERI: Yes, I do, Your Honor.

"COURT: Mr. Lansdown, you are formally arraigned in Greene County previous to the time the case came to Barry County or waived formal arraignment, is that right?

"MR. LANSDOWN: I was there, yeah.

"COURT: Mr. Barbieri and Mr. Lansdown, are you raising any question with respect to formal arraignment at this time?

"MR. BARBIERI: No, Your Honor.

"MR. LANSDOWN: No.

"COURT: Mr. Lansdown, the Court will accept your plea of guilty to the charge of first degree murder."

The prosecutor made a detailed statement of the circumstances of the crime in which he stated that, when Maggard drew his gun, Lansdown ordered the attendant to place his money in a bag. He also stated that, according to the attendant, when the deputies appeared, Lansdown told Maggard it was a Greene County sheriff's car. Maggard asked, "How many are there?" and Lansdown replied, "One, no there's two men." Maggard said, "Shall I kill them?" and Lansdown hesitated and then said, "Yes" and Maggard fired four shots through the door. (At the 27.26 hearing the court stat-

ed that the statement of the prosecutor would not be accepted as evidence of what occurred at the time of the offense. It is, however, evident that appellant was aware of the state's evidence of his active participation in the crime.)

Following a statement by Traylor on behalf of Maggard, Barbieri made a statement seeking leniency on behalf of his client. In the course of his statement he said: "Now, I asked defendant Lansdown about this conversation that took place at the time of the robbery wherein it was alleged that he made the statement to the effect, 'Go ahead and kill them.' He denies that. Defendant Lansdown denies that. He denies that he participated in any crime of violence."

On this appeal, movant argues that the statement of his trial counsel shows that his plea was equivocal and that it, therefore, must be set aside. This argument ignores the movant's own answers to the court's inquiries at the time of the plea. The movant himself answered affirmatively when the court asked if it was movant's desire to withdraw his not guilty plea and enter a guilty plea. Likewise the question "You are entering your plea of guilty because you are guilty of the offense you are charged with?" was directed to the movant and answered affirmatively by him. The statement of his attorney that Lansdown denied that he participated in a crime of violence can be no more than a denial of active participation in the killing of the deputy. Its context shows that it was made in connection with the denial that Lansdown made an affirmative reply to the inquiry by Maggard, "Shall I kill them?" Significantly absent is any denial that Lansdown had already cast his lot with Maggard by actively participating in the robbery. The statement of Barbieri did not render the plea equivocal.

The situation here is greatly different from that in the case of State v. Williams, Mo.Sup., 361 S.W.2d 772, in which a plea was set aside. In that case the inquiries at the time of the plea were directed entirely to the attorneys for the defendant. The attorneys told the court that they "hated" to enter the plea and did so only because defendant could not account for his whereabouts at the time of the crime. A death sentence entered on a plea of guilty in such situation was set aside. Although the court refers to the requirement of Supreme Court Rule 25.04, V.A.M.R., that a plea of not guilty be entered if a defendant pleads "equivocally," the basic lack in Williams was of any showing whatsoever that the defendant voluntarily and knowingly entered a plea of guilty. Here the court made detailed inquiries of the defendant and was satisfied that the plea was voluntary and knowing. The statement of the attorney did not render the plea equivocal.

On the second ground of movant's appeal, the trial court found that the plea was entered voluntarily with full understanding of the nature of the charge against him. Appellant attacks this finding, asserting that there is no basis for a finding that appellant was aware of the essence of the offense with which he was charged. Appellant points to the statement of his attorney, above considered, as evidence that he was unaware of the essentials of the crime with which he was charged, and, more importantly, to his own testimony on the 27.26 hearing:

"Q. Now, when you were arrested on May 25, 1968, what did you think at that time? What acts did you think would cause you to be guilty of this charge of first degree murder with which you were charged? A. Well, I just thought I was guilty because I was there at that time.

"Q. You mean by reason of that fact alone, Mr. Lansdown, you thought that? A. Yes, just because I was there.

"Q. By reason of that fact alone? A. Yes, alone.

"Q. At the time you entered your plea of guilty in this court, did you still have that opinion? A. Yes, I did."

On this issue, the trial court found:

"The third *contention of Movant is that he was not fully informed and did not understand the nature of the charge against him, or was under a misapprehension at the time he entered his Plea of Guilty.* The Court of necessity refers to and incorporates certain Findings of Fact with respect to Movant's first contention, i. e. denial of effective counsel.

"As indicated the gist of Movant's contention is that the Movant assumed he was guilty of First Degree Murder merely because he was present at the scene of the homicide. Counsel for the Movant in this action contends that this was a most basic error in understanding on the part of the Defendant and one which competent and effective counsel should have dispelled.

"With respect to this contention the Court finds that there was no evidence offered by Movant concerning the advice he received from either Mr. Traylor or Mr. Barbieri on this point. In the absence of such proof i. e. the nature of the advice of counsel, this Court cannot speculate that experienced counsel would improperly advise their client or 'fail to dispel' any misunderstandings he might have had. The Court finds on this point the only evidence was the statement by Movant 'I thought I was guilty because I was there.' The Court cannot nor will not assume that advice given by two experienced attorneys was of such a nature that the Movant believed he was guilty simply because he was present.

"Furthermore the Court cannot disregard the proceedings that took place before him at the time of the plea when among others the following exchange took place.

'Court: You are entering your plea of guilty because you are guilty, is that right? You are entering your plea of guilty because you are guilty of this offense you are charged with?
Mr. Lansdown: Yes.

Court: Mr. Lansdown, have you had ample time to discuss this matter with your attorney?

Mr. Lansdown: Yes.

Court: And do you feel he has fully advised you as to all of your rights in connection with this matter?

Mr. Lansdown: Yes.

Court: Mr. Barbieri, do you feel you have been able to explain fully to the Defendant, Earnest D. Lansdown, all of his rights in connection with this matter?

Mr. Barbieri: Yes, Your Honor, I do.

Court: And do you feel and believe that the defendant fully understands those rights?

Mr. Barbieri: Yes, I do, Your Honor.'

"The Court therefore finds that Movant knew and understood the nature of the charge against him and the facts necessary to be proven to establish the charge, and was not misled nor under a misapprehension at the time that he entered his plea of guilty."

■ On this record, the findings of the trial court are not clearly erroneous. The court was not required to accept movant's claim of ignorance. Ideally, the sentencing transcript should have shown that the movant was aware of the legal consequences of his participation in a felony which involved a killing. However, such lack could be supplied by the testimony of the attorney who advised him. Although the trial court relied primarily upon inference that such had occurred, there was direct testimony to that effect. Mr. Barbieri testified that he advised his client what he was charged with. When effort was made to elicit the nature of such advice, counsel for movant objected, raising the attorney-client privilege and the objection was sustained. Movant had no standing to raise the attorney-client privilege, having attacked the adequacy of his representation on the grounds that the attorney failed to advise him fully. Farr v. United States, D.C., W.D.Mo., 314 F.Supp. 1125, 1128 [2]. Having interposed the unmeritorious objection which precluded full exposition of the attorney's advice, movant

cannot now be heard to complain that a finding, based on the attorney's statement that he advised movant of the offense with which he was charged, is clearly erroneous.

■ The trial court rejected movant's contention that the conditions of his imprisonment made his plea involuntary. Here, movant merely contends that the conditions of which he complained "encouraged" his misapprehension of the basis of the charge against him. The trial court's rejection of the charge of mistreatment has not been demonstrated to have been clearly erroneous and the trial court's denial of relief on that basis is not to be overturned.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.