**Merle Ray WINFORD, Respondent,**

v.

**STATE of Missouri, Appellant.**

**No. 56319.**

Supreme Court of Missouri, En Banc.

Sept. 11, 1972.

Rehearing Denied Oct. 9, 1972.

44

Murphy & Kortenhof, Joseph M. Kortenhof, St. Louis, for respondent.

John C. Danforth, Atty. Gen., Kermit W. Almstedt, Asst. Atty. Gen., Jefferson City, for appellant.

HOLMAN, Judge.

Appeal by the State from order sustaining motions of Merle Ray Winford under Criminal Rules 27.25 and 27.26, V.A.M.R., to vacate and set aside judgment of conviction and sentence to life imprisonment entered on plea of guilty to charge of murder, second degree.

This appeal was originally heard in Division One where an opinion was adopted, but the case was subsequently transferred to Court en Banc because of the dissent of one of the judges. After the case was reargued the Division opinion failed of adoption en Banc and the cause was assigned to the undersigned. Portions of the aforementioned opinion are here adopted without the use of quotation marks.

On September 25, 1964, Merle Ray Winford was charged by information with murder, first degree. On September 30, 1964, he entered a plea of not guilty. On April 13, 1965, in open court, the State "reduced" the charge to murder, second degree, and recommended a sentence to life imprison-

ment. Defendant, through his attorney, John Chancellor, withdrew his plea of not guilty and entered a plea of guilty to murder, second degree. The court accepted the guilty plea, honored the State's recommendation, and sentenced defendant to life imprisonment.

Beginning September 23, 1969, Merle Ray Winford filed a series of five motions to vacate judgment and sentence alleging variously as grounds for relief: that his plea was gained by false and misleading promises; that he was denied effective assistance of counsel; that he was forced to incriminate himself; that there was no conduct admitted by defendant which would have constituted murder in any degree; that the record before the sentencing judge is silent as to any incriminating conduct of defendant; that the judge never informed him of his rights; that the court did not determine that the plea was voluntarily entered and, by such failure, defendant was denied due process and his rights against self-incrimination, jury trial, and to confront witnesses.

On April 17, 1970, Merle Ray Winford, by and through his attorney, Joseph M. Kortenhof, filed "Supplemental Motion to Set Aside Judgment of Conviction and Sentence and Withdraw Plea of Guilty (Rules 27.25 and 27.26), * * * in addition to, but not in lieu of, the other Motions heretofore filed by the said Merle Ray Winford, *pro se*," to allege, as grounds for relief:

1. The nature of the charge was not adequately explained to defendant by either the court-appointed attorney or by the court prior to the reception of defendant's guilty plea.

2. Defendant, at the time of his guilty plea, did not know its consequences and legal significance.

3. Ineffective assistance of counsel.

4. Insufficient evidence to sustain a first or second degree murder charge and failure of counsel to so advise defendant.

5. Counsel appointed so late that real or intelligent investigation and preparation were precluded.

6. Defendant misled by counsel to believe an agreement had been reached for a ten-year sentence upon a guilty plea.

The evidentiary hearing was accorded April 17, 1970; movant's evidence consisted of his own testimony and the transcript of proceedings on his guilty plea of April 13, 1965.

Merle Ray Winford was discharged from the Army in October 1963. Prior to September 19, 1964, the date of the alleged offense, he had last been employed in July 1964. He had no previous conviction or difficulty with authorities. He was arrested September 20, 1964, on a check charge, and was in custody at all times thereafter. Approximately forty-five minutes after arrest, "I was told I had killed a person and they requested that I sign some papers. I told them I did not kill anyone. I was beat up and asked to sign the papers again—I still refused to sign the papers; I was beaten again—and I signed the papers." He signed a paper styled a confession in which he admitted shooting a young woman to death. He signed the paper because he "couldn't take the beating any more. * * * I had not shot nobody." He first talked to an attorney, "a member of the Public Defender," three or four weeks after he was charged. He saw Mr. John Chancellor "four or possibly five times" for a total of "fifty minutes." He said "there was very little he could do, due to the fact that I had signed a confession— that I had better plead guilty or I might end up in the gas chamber." He told Mr. Chancellor the confession was false and that he gave it only to avoid further beating. They never discussed suppressing the confession. "Mr. Chancellor said—if I could get you a fixed amount of years, would you plead guilty, and I believe he said ten years—and I agreed to plead guilty to ten years. * * * I was under the impression * * * the confession was binding and it could put me in the gas cham-

ber." He was not informed to the contrary; and, with respect to calling witnesses or establishing an alibi, Chancellor "shrugged it off and said it would do no good." At the time of his plea, he did not know the difference between first and second degree murder but did know he could be put in the gas chamber. He was not aware of the maximum or minimum punishment; it had not been explained to him; and he believed he would be given ten years. At the time of appearance before Judge McFarland, "I was still a bit confused * * *. I actually did not know what was going on." Judge McFarland should set aside the guilty plea and set the case for trial "because I am not guilty of shooting anybody." With respect to giving any legal reason why his plea should not have been accepted, he could give no legal reason at the time of his plea. "I had no knowledge of the law." He did not say anything when he got life instead of ten years because he "was shocked beyond speech; I couldn't believe it." He did not understand that when the plea was entered he was agreeing to facts as narrated by the prosecutor, Mr. Kitchin. He learned of his rights only after consultation in prison with "jailhouse lawyers."

The transcript of proceedings of April 13, 1965, showed:

"MR. KITCHIN: This is Cause 1378–M. The defendant is Merle Ray Winford, charged with murder first degree. The State will reduce the charge to murder second degree and recommend life in the State Penitentiary, Department of Correction.

"MR. CHANCELLOR: At this time the defendant will withdraw his plea of not guilty and enter a plea of guilty to the charge as amended, that is, the charge of murder second degree.

"THE COURT: What are the facts in this case?

"MR. KITCHIN: Your Honor, on Saturday, September 19, 1964, about 1:30 p. m., this defendant drove his girl he was going with, by the name of Bertha Lee White [Brenda Lee Wyatt], to the Lagoon Drive in Forest Park, where they discussed their relationship and she told him that she was going to leave him, break up with him, and so forth. So she started to get out of the car and he got a .22 caliber revolver from underneath the seat of the automobile and as she got out of the car he fired two shots into her head. He then took the body and placed it in the trunk of the automobile and drove to somewhere in Arkansas first and then to Kennett, Missouri. The sheriff of that county in Kennett, Missouri, found the body of the girl in the trunk of the automobile.

"MR. CHANCELLOR: For the benefit of the record may I state that the reduction is most proper in that this is not correctly murder in the first degree. He was not in the cool state of the blood. It was an offense brought about in a moment of passion.

"THE COURT: Is this the case where the defendant returned to the City? MR. KITCHIN: That is correct. THE COURT: And told the authorities where the remains of the girl could be found? MR. KITCHIN: He was in a daze and drove one hundred and eighty or two hundred miles.

"THE COURT: How old a man are you? THE DEFENDANT: I am twenty-eight years old, Your Honor.

"THE COURT: How much education have you had? THE DEFENDANT: I have a high school education.

"THE COURT: Where were you raised? THE DEFENDANT: I was born here in St. Louis, Sir.

"THE COURT: Have you been married? THE DEFENDANT. Yes. THE COURT: Divorced from your wife, is that it? THE DEFENDANT: Yes. MR. CHANCELLOR: His wife is very interested in what is happening.

"THE COURT: Do you know any legal reason why the Court should not accept your plea of guilty at this time? THE DEFENDANT: None whatsoever. THE COURT: Is there any reason, legal or oherwise, why I should not impose sentence? THE DEFENDANT: No.

"THE COURT: All right. Merle Ray Winford, in Cause No. 1378–M, wherein you are charged with the offense of murder in the second degree, the court will accept your plea of guilty as charged. And I hereby sentence you to life imprisonment in the Department of Correction."

Evidence pertinent to the State's response consisted of testimony of witnesses Chancellor, Kitchin, and Friedman.

John D. Chancellor was an attorney employed by the Public Defender Bureau of the City of St. Louis. He opened a file on behalf of Merle Ray Winford October 1, 1964. He could not recall the number of times he talked to Mr. Winford but "they were numerous." He was never presented with any alibi witnesses and he never promised defendant any term of years. He discussed the difference between murder in the first and second degree and the difference in punishment for those offenses. He discussed plea recommendations with the circuit attorney and obtained an agreement to recommend life imprisonment on a guilty plea. He explained the recommendation to the defendant. "I explained to him that if he went to trial on murder, first degree, that if he was convicted of that offense, the choice would be up to the jury—it would be either life imprisonment or death. I explained to him if the State tried the case they would be seeking the death penalty. I explained to him, on the contrary, that the State was willing to amend the charge to murder, second degree, if he elected to plead guilty, that the range of punishment—and this was the only time ten years was mentioned—the range of punishment was ten years to life. I told him the recommendation was life. * * * he never told me he was beaten." Mr. Chancellor was aware of a confession signed by defendant. He made arrangements for defendant to have a mental examination and conferred with the circuit attorney's office regarding the confession. He made no investigation other than to talk to defendant; he did not see where he could investigate elsewhere based on what he learned from defendant.

Charles Kitchin was the assistant circuit attorney present at the plea proceedings. He recommended a life sentence when the guilty plea was entered, although he did not "negotiate the file" with Mr. Chancellor. He had never talked with Mr. Winford, and he could recall no "bizarre or unusual behavior as he stood before His Honor"; and he recalled no shock exhibited by defendant following the sentencing.

Arthur Friedman, also an assistant circuit attorney, took the written statement from defendant. On the Sunday afternoon of defendant's arrest, he met defendant, in company of two homicide detectives, at Forest Park. Defendant did not appear to be battered, bruised or beaten in any manner. There were no signs of blood and defendant made no complaint of beatings or third-degree tactics. Defendant was not struck in any manner during the time the statement was taken, typed, and signed. He made no recommendation in the case and he understood "that if the case was going to trial the State was going to seek the death penalty * * *."

The court made Findings of Fact and Conclusions of Law:

1. "* * * that the appointed counsel for petitioner fully explained to him the nature of the charge, the punishment prescribed by law, and the legal consequences of his having given a written confession as to his having committed the offense."

2. "* * * the petitioner, although at the time of the sentencing was not questioned about the consequences of such a plea, knew full well the nature of the charge, the punishment prescribed by law, and that the offense of murder in the first degree was

being reduced to murder in the second degree."

3. " * * * that not only was effective assistance rendered to petitioner, but excellent service was given to him in persuading the State to reduce the charge from murder, first degree, to murder second degree."

4. " * * * the *information* or evidence given in the hearing with reference to physical punishment inflicted by the Police Department may have warranted such an attack upon the confession, but the Court finds beyond a reasonable doubt *that no such information was furnished to petitioner's appointed counsel* as to any 'third degree' or brutal punishment by members of the Police Department."

5. The contention "that the duly appointed counsel for petitioner was prevented from making an intelligent investigation and preparation for trial, is without merit."

6. "The only evidence to support Point 6, raised in petitioner's *motion*, is his testimony at the evidentiary hearing that he was misled in entering a plea of guilty to the charge of murder, second degree, on the assumption that he would receive a penalty of ten years. There is contradictory evidence from his appointed counsel to the effect that he advised petitioner that he would make an effort to have the murder, first degree, charge reduced to murder, second degree, and that the punishment for murder, second, was ten years minimum to life imprisonment in the State Penitentiary. Counsel for petitioner was successful in persuading the prosecuting officials to reduce the charge, but was unsuccessful in obtaining a recommendation of ten years. Therefore, this point is ruled against the petitioner because the Court is convinced that there is no doubt that the court-appointed attorney, John Chancellor, was telling the truth when he testified at the evidentiary hearing."

With respect to whether the court adequately explained to him the nature of the charge pending against him and the legal consequences of entering such plea, the court found:

" * * * that the court failed to fully advise the defendant of all his constitutional rights, including an explanation of the charge that was placed against him, his right to a trial by jury, his right to have witnesses confront him, and all of the constitutional rights guaranteed to every citizen under the United States Constitution and the Constitution of Missouri relating to the entry of a plea of guilty to a criminal charge. Under Supreme Court Rule 25.04 the following is provided: ' * * * The Court * * * shall not accept the plea without first determining that the plea is made voluntarily, with understanding of the nature of the charge. [If a defendant refuses to plead or pleads equivocally * * * the Court shall enter a plea of not guilty].'

"See transcript of proceedings on plea of guilty dated April 13, 1965.

"See State v. Blaylock, Mo.Sup., 394 S.W.2d 364. This the Court failed to do and, for this reason and this reason alone * * *" the plea of guilty heretofore entered April 13, 1965, is "permitted to be withdrawn; the judgment of conviction and sentence imposed thereafter is hereby set aside and for naught held."

It is the contention of the State that the trial court erred in permitting the plea of guilty to be withdrawn in view of its factual findings indicating that the plea was voluntarily entered. It is said that the court erred in its conclusion of law that the defendant should be permitted to withdraw his plea because the court failed to fully comply with Rule 25.04 "for this reason *and this reason alone.*" (Emphasis ours.)

Defendant's (movant's) contention here is best shown by the following quotation from his brief: "The narrow issue presented to the court here is whether this court should reverse a trial court determination that Rule 25.04 was not complied with and that consequently the plea should be withdrawn even though the trial court did believe, on the evidentiary hearing, that

the plea was given knowingly and freely. It is submitted that Judge McFarland has pointed the way. Full and literal compliance with Rule 25.04 is mandatory. Should this court hold that Rule 25.04 may be ignored by the sentencing judge simply by finding on the evidentiary hearing that the plea was freely and knowingly given, in spite of the total lack of compliance with the Rule, there would be no use for the Rule in the first place and it should be stricken."

■ While Rules 27.26 and 27.25 are both mentioned, we think this is primarily a proceeding under Rule 27.25. That rule provides that "to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." It should also be noted that the rule with which we are here primarily concerned (25.04) provides that "[t]he court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." It is certainly highly desirable that the transcript of the proceedings at the time the plea of guilty is accepted should affirmatively demonstrate a compliance with the requirements of Rule 25.04. State v. Roach, Mo.Sup., 447 S.W.2d 553. There is no precisely prescribed procedure which must be followed in complying with that rule. Donaldson v. State, Mo. Sup., 477 S.W.2d 84 [6]. This court, however, in effect, recommended in Flood v. State, Mo.Sup., 476 S.W.2d 529 (see concurring opinion of Donnelly, J.) that the record show that rather extensive interrogation and explanation be conducted to demonstrate that defendant understands all of his "rights" and with that knowledge is proceeding voluntarily.

■ It is, however, settled beyond question in this State that "a defendant may not by reason of Rule 27.25 withdraw his plea of guilty as a matter of right on the basis that the record does not demonstrate a substantial compliance with Rule 25.04 at the time the plea of guilty was accepted. The withdrawal of a plea of guilty after sentence is appropriate only to correct manifest injustice. An application to withdraw a plea of guilty made after sentence is an attack on the validity of that sentence within the meaning of Rule 27.26, as amended and effective September 1, 1967. If it be found on the hearing on the motion to vacate the sentence, notwithstanding the insufficiency of the record at the time the plea was accepted, that the plea of guilty was in fact voluntary and was made with an understanding of the nature of the charge, then no manifest injustice could have resulted." State v. Sayre, Mo.Sup., 420 S.W.2d 303, 304, 305. See also the more recent cases of Schuler v. State, Mo.Sup., 476 S.W.2d 596; Peterson v. State, Mo. Sup., 476 S.W.2d 608, and Tyler v. State, Mo.Sup., 476 S.W.2d 611. It necessarily follows from the quoted rule that the ruling of the trial court in this case was "clearly erroneous" in the conclusion of law that failure to comply with Rule 25.04 required that the defendant be permitted to withdraw his plea of guilty "for this reason alone."

We observe that the findings of the trial court did not include the specific statement that defendant entered his plea voluntarily. It is our view, however, that such is the only reasonable conclusion that could be reached from the findings that were made. It is also apparent from the foregoing quotation from movant's brief that he agrees with that conclusion.

■ As we have stated, the trial court found, in effect, that the plea of guilty was entered voluntarily with understanding of the charge and our review of the evidence has caused us to agree with that finding. In that situation we hold that the fact that the transcript did not show a full compliance with the requirements of Rule 25.04 at the time the plea was entered does not support the judgment permitting the plea to be withdrawn. This court stated in State v. Parker, Mo.Sup., 413 S.W.2d 489, 494, that "[t]he procedure provided by our Criminal Rule 27.25 is appropriate only in extraordinary cases; after sentence, it is available only 'to correct manifest injus-

tice.'" In the case at bar the defendant has not suffered "manifest injustice" and hence the relief he sought should have been denied.

The judgment is reversed.

FINCH, C. J., and DONNELLY, and HENLEY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents in separate dissenting opinion filed, and concurs in separate dissenting opinion of BARDGETT, J.

MORGAN, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge (dissenting).

The majority opinion adopts the opinion prepared by Judge Higgins, Commissioner in Division One, through the court's findings of fact and conclusions of law, and to its statement of the state's (appellant's) contention. The majority opinion then observes that the findings of the trial court did not include a specific "statement" that defendant entered his plea voluntarily, and nevertheless undertakes to reverse the trial court's findings to the contrary and the grant of relief to movant on a "view" that such is the only reasonable conclusion that could be reached from the findings that were made.

I do not believe this to be an authorized determination of this case within the scope of review of this proceeding as limited by Rule 27.26(j), V.A.M.R. If denial of relief to a movant is to be affirmed when such denial is not "clearly erroneous", the court must be consistent with its own rule and affirm the grant of relief to a movant when such grant is not "clearly erroneous".

In application of that premise to this case, I adopt the remainder of Judge Higgins's opinion as part of my dissent.

"Appellant contends the court erred in granting movant relief on the court's failure to comply with Criminal Rule 25.04, 'since, in fact, the trial court had made findings of facts at the 27.26 hearing that the record disclosed that petitioner when he entered his plea of guilty was fully apprised of the nature of the crime for which he was accused and the consequences of pleading guilty thereto.'

"In meeting appellant's contention, respondent reminds that Criminal Rule 27.26 (j), V.A.M.R., defines the scope of an appeal by either the prisoner or the state, and under the rule, 'Appellate review shall be limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous.' See State v. Edmondson, Mo., 438 S.W.2d 237, 241–242 [1, 2].

"Appellant cites a number of cases affirming a denial of withdrawal of guilty pleas, e. g., State v. Mountjoy, Mo., 420 S.W.2d 316, State v. Sayre, Mo., 420 S.W.2d 303, Drew v. State, Mo., 436 S.W.2d 727, Mooney v. State, Mo., 433 S.W.2d 542, Bellew v. Swenson, Mo., 459 S.W.2d 351, with particular emphasis on holdings to the effect that failure of the trial court to comply with Rule 25.04 is immaterial if the evidence at the 27.26 hearing establishes that the plea was made voluntarily with understanding of the nature of the charge, e. g., Watson v. State, Mo., 446 S.W.2d 763. Appellant cites also a number of cases governing voluntariness of a guilty plea, e. g., Kercheval v. United States, 274 U.S. 220, [47 S.Ct. 582, 71 L.Ed. 1009] Ford v. United States, 8 Cir., 418 F.2d 855, North Carolina v. Alford, 400 U.S. 25, [91 S.Ct. 160, 27 L.Ed.2d 162] Brady v. United States, 397 U.S. 742, [90 S.Ct. 1463, 25 L.Ed.2d 747] Parker v. United States, 397 U.S. 790, [90 S.Ct. 1458, 25 L.Ed.2d 785] Fleck v. State, Mo., 443 S.W.2d 100.

"The purpose of such citations is to support an argument that the court in granting relief to movant 'engaged in a true *non sequitur*. The court's finding of fact * * establishes beyond any doubt that the trial

court was convinced that when the plea of guilty was entered by petitioner it was made voluntarily and with a full understanding of the nature and consequences of the charge of murder in the second degree.'

"The difficulty with appellant's argument is that the court's six numbered findings do not constitute necessarily a finding of a voluntary plea of guilty. The court might very well have made such a finding on the evidence in this case, and the burden might then be on the prisoner to demonstrate the finding to be 'clearly erroneous'. The situation, however, is different than the appellant would have it because the court did not make the ultimate finding of a voluntary plea of guilty which, if supported, could override a failure to comply with Rule 25.04, Watson v. State, supra. Instead, the court simply has found against movant on six of his grounds for relief, and has found for him and granted relief on the ground the court failed to explain the charge, his rights, including rights to trial by jury and to confront witnesses, and that such was a failure also to determine that the plea was made voluntarily. Appellant concedes the insufficiency of the plea record to show compliance with Rule 25.04.

"Consequently, Judge McFarland's finding of his own failure to comply with Rule 25.04 is supported by the evidence; it is not selfcontradicting; it is in correction of the court's own error; and, accordingly, it may not be said to be clearly erroneous. Support in the case law may be found in the trial court's own authority, State v. Blaylock, Mo., 394 S.W.2d 364, and State v. Roach, Mo., 447 S.W.2d 553. See also Bellew v. Swenson, supra, 459 S.W.2d l. c. 355. In contrast, under similar circumstances and assertions, compare the painstaking compliance with Rule 25.04 in Lansdown v. State, Mo., 472 S.W.2d 342."

Additionally it is significant that the trial judge did not make a finding that defendant entered his plea voluntarily. The absence of such a finding is consistent with the judgment of the trial court setting aside the plea of guilty. This is particularly so in this case because the same trial judge who took the guilty plea set it aside.

In these circumstances the trial court's judgment permitting the guilty plea to be withdrawn is compatible with the failure to find the plea was voluntarily entered and was supported by evidence and consequently is not clearly erroneous.

The majority opinion holds that "the trial court found, *in effect*, that the plea of guilty was entered voluntarily with understanding of the charge and our review of the evidence has caused us to agree with that finding." (Emphasis supplied.) Thus it seems acknowledged that this court's holding that the plea was entered voluntarily is an *inferred* finding on this court's part. This inferential finding is inconsistent with the trial court's judgment.

Adherence to the "clearly erroneous" rule for review, while permitting in some instances the indulgence on appeal in inferential findings to *affirm* a trial court's judgment, may not be resorted to as the basis for *reversing* a judgment of the trial court.

In my opinion the judgment of the trial court was not clearly erroneous and should be affirmed. For the foregoing reasons, I dissent from the majority opinion filed herein.

SEILER, Judge (dissenting).

I respectfully dissent. In my opinion the majority is reading too much significance into the statement of the trial court that "for this reason alone" the plea of guilty was permitted to be withdrawn. The majority takes this as meaning, and as being the only possible meaning, that the trial court granted relief because it believed that inasmuch as rule 25.04 had not been followed it literally had to set aside the plea, regardless of the other facts.

In so doing the majority opinion ignores the effect of the acknowledgment by the trial court that it failed to advise the defendant fully of his constitutional rights, which may have been the only way the de-

fendant could have appreciated what his rights were, no matter what counsel and prosecutor said to him on the subject. This constituted evidence which supported the granting of relief, and, this being so, we cannot declare the action of the trial court was clearly erroneous. As I have understood it, on these 27.26 reviews we look to see if there is evidence supporting the decision of the trial court. If there is, then we cannot say it was clearly erroneous. We have affirmed countless denials of relief on this basis. The same principle would apply, of course, to the affirming of the granting of relief.

Additionally it should be pointed out that in taking the view that the trial court thought it had to grant relief because the court had not complied with 25.04 at the time of sentencing, the majority overlooks the citing by the trial court of State v. Blaylock (Mo.Sup.), 394 S.W. 364, which shows the trial court correctly understood rule 25.04 and the effect of the failure of the court to advise the defendant fully of of his constitutional rights.