John Ray McANULTY,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 15889.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 16, 1989.

Nancy A. McKerrow, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

HOGAN, Judge.

Pursuant to a plea bargain, movant John Ray McAnulty (hereinafter defendant) pled guilty to a charge of second-degree burglary in violation of § 569.170, RSMo 1978. He was sentenced to imprisonment for a term of 7 years. Subsequently the defendant filed a motion pursuant to former Rule 27.26 seeking to vacate his plea on five diffusely stated grounds. Relief was denied without an evidentiary hearing. The defendant now appeals. Inasmuch as sentence was pronounced prior to January 1, 1988, and this proceeding was pending when present Rule 29.15 became effective, the appeal is governed by the provisions of former Rule 27.26. Rule 29.15(m).

The defendant has briefed a single point. Slightly paraphrased, defendant's argument is that the trial court erred in denying relief without an evidentiary hearing because his allegation that he was coerced into his plea by his trial attorney's refusal to take any steps preparatory to mounting a defense: a) alleges facts which would warrant relief; and b) is not refuted by the record. Essentially, defendant's argument is that his plea was not voluntary.

■ There are a few general principles to be borne in mind. After sentence has been pronounced, a plea of guilty will be set aside only to correct a manifest injustice. *Winford v. State,* 485 S.W.2d 43, 49 (Mo. banc 1972); *Row v. State,* 680 S.W.2d 418, 419 (Mo.App.1984); *Moore v. State,* 624 S.W.2d 520, 522[2] (Mo.App.1981). In addition, the defendant's position is weakened by the fact that the sentence was imposed pursuant to a plea bargain, and the defendant avers no breach thereof. *See McIntosh v. State,* 627 S.W.2d 652, 655 (Mo.App.1981). Nor is it of controlling significance that the plea was an *Alford* plea. As the court stated in *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970), "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." The principles which are controlling in this case are those set out in *Thomas v. State,* 605 S.W.2d 792, 794–95 (Mo. banc 1980), thus:

> "[3, 4] To be entitled to an evidentiary hearing on the voluntariness of a guilty plea, defendant must plead facts which if true entitle him to relief and must show that such factual allegations are not refuted by facts elicited at the guilty plea hearing. *Smith v. State,* 513 S.W.2d 407 (Mo. banc 1974) cert. denied, 420 U.S. 911, 95 S.Ct. 832, 42 L.Ed.2d 841 (1975). If the record conclusively establishes that the accused knowingly and voluntarily pleaded guilty, it is proper to deny an evidentiary hearing on a motion for post conviction relief based on an allegation that the guilty plea was coerced. *Jackson v. State,* 585 S.W.2d 495 (Mo. banc 1979)."

■ We have first to consider a printed "Petition to Enter Plea of Guilty" which was used in this case, apparently to insulate the plea against collateral attack to some degree. The petition was executed by the defendant's attorney and was signed by the defendant. One of the representations contained in the petition reads thus: "6. My lawyer has counseled and advised with me on the nature of each charge, on all lesser included charges, if any, and all possible defenses that I might have in this case." When he was examined under oath

by the trial court, the defendant stated he had "read the paper" and indicated he understood it. Although printed forms have limits, the "Petition to Enter Plea of Guilty" also contains the following representations:

"14. Neither I, nor any of my friends or loved ones, have been mistreated, threatened, coerced, or forced in any manner or by any means to get me to plead guilty, nor were there any promises, inducements, or representations made except as set forth in paragraph 13 above.[1]

15. I believe that my lawyer has done all that anyone could do to counsel and assist me, and I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME."

The trial court, as we have indicated, addressed the defendant personally in open court as required by Rule 24.02(b) and (c). A transcript of the proceeding was prepared as required by Rule 24.03. Parts of that record are material on this appeal. Preliminarily, the trial court advised the defendant not to sign the petition to plead guilty unless he understood it. In response to continued questioning, the defendant stated he could read and write, had no physical ailment which would affect his ability to understand the proceedings, was able to hear and had had no medicine or drugs within the preceding 24 hours. The defendant was 25 years of age and ordinarily worked as a truck driver. The court's interrogation then continued thus:

\* \* \* \* \* \*

"Q. The Defenders have represented you. I believe you have had two defenders, or has Mr. Beatty represented you since the beginning?

[DEFENDANT'S ATTORNEY]: No. Mr. Luber represented him prior to myself.

Q. (By the Court) You have had two, so the questions I will ask will concern both of them. Are you satisfied with their representation?

A. Yes, sir.

Q. Do you have any complaint concerning your representation before this Court?

A. No.

Q. Do you understand if you do, now is the proper time to raise that?

A. Yes.

Q. And you are telling me you are satisfied with their work?

A. Yes, Your Honor.

Q. Have you had an opportunity to sit down and give them all the facts that give rise to these charges?

A. Yes.

Q. And you have told them about it?

A. Yes.

Q. Have they counseled with you on the law, discussed your rights and talked with you about it?

A. Well, I read the paper.

Q. Well, the paper includes your rights. Do you have any questions about your rights?

A. No, Your Honor.

Q. Do you understand them?

A. Yes.

Q. Is there anything that you want Mr. Beatty to do that he has not done?

A. No.

Q. Is there anything that you have asked him to do that he has not done?

A. No.

Q. Is there anything you would like for me to have him do for you?

A. No, not that I can think of right now.

Q. Do you understand then you are telling me that you are satisfied with his work?

A. Yes.

Q. Have you been fairly treated by all officers of the law?

A. Yes.

Q. Has anyone threatened you or harmed you or mistreated you or any

---

**1.** Paragraph 13 set out the plea bargain which had been struck with the Prosecutor, who had agreed to reduce the charge against the defendant from first-degree burglary to second-degree burglary and to recommend a sentence to be served concurrently "with previous charges."

members of your family in any way to get you to make this plea?

A. No.

Q. Do you make this plea because you did the things you are charged with?

A. Yes.

Q. As I asked you before, has anyone instructed you to withhold any information from me?

A. No."

\* \* \* \* \* \*

The trial court then undertook to determine if there was a factual basis for the plea. The proceeding continued thus:

"[THE PROSECUTOR]: Judge, on August 15, 1983, Mr. McAnulty entered the residence of Mary and Brad Wilson located at 120 Lashmet Drive there in Sikeston. Mrs. Wilson returned home, found Mr. McAnulty in a storage closet, or some type of area there, and he fled from the scene.

Officers put together a photographic lineup. She picked Mr. McAnulty out of the lineup, and he was arrested for first degree burglary. At the time that he did commit this offense, he was on a [Personal Recognizance] bond from this court while a presentence investigation was being conducted.

Q. (By the Court) Mr. McAnulty, did you hear the statements of the prosecutor?

A. Yes, Your Honor.

Q. Are those statements substantially correct?

A. Yes.

Q. You were in the house of Mary Wilson for the purpose of stealing, I presume?

A. I didn't take anything.

Q. Why were you in there?

A. Dennis Epstein used to live there. Mr Luber—he looked in the telephone book and he looked up the address and phone number and he was trying to get hold of him, but before he left, he never did contact me or tell me anything about it, and Mr. Luber said Mary was in the apartment, but she was outside in the hallway in front of the door.

Q. Did you know her?

A. No, I didn't.

Q. But you knew it was not your apartment?

A. Yes.

Q. You knew you had no right to be there?

A. Yes.

Q. How did you get in?

A. I thought I heard someone holler, 'Come in,' and opened the door and came in. There was no one there, and I come right back out. I went through the living room, and I looked in the kitchen. I went out the kitchen door. When I came out the backdoor, she was standing—she just opened the door, and she was standing with some groceries.

\* \* \* \* \* \*

Q. You went in the house because you thought that was your friend's house?

A. Yes.

Q. That's the honest to goodness truth?

A. Yes, Your Honor.

\* \* \* \* \* \*

Q. Do you think they would convict you?

A. Probably.

Q. Do you want to change it to an Alfred [sic] plea?

A. I want to plead guilty now.

\* \* \* \* \* \*

Q. Do you believe that if you would submit that to 12 people sitting there in the jury box, do you believe they would convict you?

A. Like I say, probably.

Q. You believe they would convict you?

A. Yes."

The court then advised the defendant, generally, of his Sixth Amendment rights and further advised him that if he pled guilty, he would waive his right to a trial.

■ There is so little correlation between the propositions advanced in the defendant's brief and the content of the

record it is difficult to address the contention developed in the "argument" part of the defendant's brief. For example, counsel asserts in her brief "... Appellant's 27.26 motion contained a factual allegation which is not refuted by the record. That is that appellant's trial counsel coerced appellant's Alford plea by refusing to take the steps necessary to mount a defense to the charge of second degree burglary." Counsel has not undertaken to describe what defense, other than that advanced by the defendant at the hearing on the guilty plea, could have been developed by any amount of effort. Indeed, reduced to its essence, the defendant's motion is little more than a bare recantation of his answers to the trial court at the hearing on his guilty plea. The allegations of the postconviction motion are, in our view, conclusively refuted by the record, and upon the authority of *Thomas v. State*, 605 S.W.2d at 794–95, the judgment of the trial court is affirmed. Even if the assertions of the motion were true, the following observation from *United States v. Allen*, 668 F.Supp. 969, 974 (W.D.Pa.1987), is appropriate:

> "To unsettle a valid guilty plea, a defendant's assertion of innocence must be credible.... We should not evaluate the likelihood that the defendant would succeed at trial with his defense ... but the defendant must offer more than a conclusory protestation that he is not guilty.... For the benefit of both the defendant and the prosecution, our system of criminal justice allows a defendant who though believing in his innocence, recognizes the likelihood that a jury will convict him, to plead guilty so that he may lessen the sentence he is likely to receive. See *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Unless both the defendant and the prosecution are held to their sides of the bargain, plea bargaining would lose its attraction, to the detriment of all parties involved...."

What we have just said is intended only as an observation based on the arguments presented. To reiterate, the judgment is affirmed because the allegations of the motion are conclusively refuted by the record.

FLANIGAN, P.J., and MAUS and PREWITT, JJ., concur.